427 So.2d 343 (1983)
Vernon H. KELLERMEYER, David C. Carter and John J. Parker, Appellants,
v.
John S. MILLER, Jr., Appellee.
No. AN-110.
District Court of Appeal of Florida, First District.
March 1, 1983.
*344 Everett P. Anderson, Tallahassee, for appellants.
J. Ben Watkins of Watkins & Russell, Apalachicola, for appellee.
PER CURIAM.
In this legal malpractice action Kellermeyer, et al., appeal the trial court's granting of summary judgment for appellee, attorney Miller, based on Miller's defense of statute of limitations. Appellants contend that the statute of limitations did not begin to run until December 27, 1977 because it was on this date that they first incurred legally cognizable damages to support their cause of action for negligence. We disagree and affirm.
In 1973 Kellermeyer, through his corporation, agreed to sell 115 acres of unimproved Leon County property to Revlis Mortgage Corporation (Revlis) for $538,400.00. As consideration, Revlis was to give Kellermeyer and others cash together with a $382,264.00 note and purchase-money mortgage. At this time Revlis was to also receive a development loan from Security Mortgage Investors (SEMORCO), and all parties contemplated that Kellermeyer's purchase-money mortgage would be subordinated to the SEMORCO development loan mortgage. Attorney Miller was to represent Kellermeyer in these transactions.
Shortly before closing, Kellermeyer sought assurance from Miller that the proceeds of the SEMORCO development loan would in fact be used by Revlis for the sole purpose of improving the property which Kellermeyer was selling to Revlis, thus insuring the security of Kellermeyer's subordinated mortgage. Since the mortgage instrument itself contained no mechanism, to accomplish this purpose, Miller added an eighth paragraph to a collateral agreement wherein Revlis agreed to use the development loan to develop the property in question. This paragraph stated, "That Revlis agrees that any and all moneys advanced to them or borrowed by them that is secured by this property will be used in the development of this property." This collateral agreement was signed by Mr. Kellermeyer and by Cortland Silver for Revlis. It is alleged that although Miller advised Kellermeyer that this collateral agreement would provide the needed protection, Miller never brought this document to the attention of the development loan mortgagee, SEMORCO, with whom an agreement would have been necessary to provide the desired protection. The collateral agreement was not made a part of the closing documents or recorded. It is also alleged that Miller represented Revlis at the closing of the SEMORCO loans and issued a mortgagee title insurance policy on the property in favor of SEMORCO.
*345 Revlis never applied the SEMORCO loan proceeds to the Leon County property, diverting them instead to another corporation. Revlis then defaulted on its annual payment to Kellermeyer on April 26, 1974. On November 19, 1974 Kellermeyer sued Revlis on the promissory note, but not on the mortgage, in a Minnesota state court. On November 17, 1975 SEMORCO obtained a judgment for $895,986.00 on its notes, not its mortgage, against Revlis. On November 26, 1975 Revlis filed for bankruptcy, and a stay was entered prohibiting Kellermeyer from pursuing the suit on the note.
In March of 1976 Kellermeyer's Minnesota counsel, Mr. Fruth, wrote a letter to Mr. Ervin, a Tallahassee lawyer, seeking to engage his services in connection with the planned Leon County foreclosure proceedings on Kellermeyer's purchase-money mortgage. The letter recited Miller's participation in the various transactions. The letter stated that Kellermeyer would seek to have SEMORCO's first mortgage declared invalid on grounds of fraud or estoppel, thus enabling Kellermeyer to foreclose on his purchase-money second mortgage.
In October 1976 Kellermeyer applied for relief from the bankruptcy stay for the purpose of foreclosing on his purchase-money mortgage. The application for relief from stay recited that Revlis was indebted to Kellermeyer in the sum of $445,551.00, that SEMORCO held a judgment against Revlis in the amount of $895,986.00, and that the highest appraisal on the Leon County property was $800,000.00. Since the value of the real property was less than the sum of the mortgages held by Kellermeyer and SEMORCO, a relief from the bankruptcy stay was granted, and in January of 1977 SEMORCO instituted foreclosure proceedings in Leon County. On December 27, 1977 SEMORCO's mortgage was held to be superior to Kellermeyer's mortgage. On May 10, 1978 Kellermeyer instituted suit against attorney Miller for malpractice. On June 4, 1982 the court below entered final summary judgment in favor of Miller. The court found that appellants had discovered the facts of Miller's alleged malpractice and legally cognizable damages no later than April 1975, and that, therefore, the two year statute of limitations barred the action.
Appellants do not deny that the applicable statute of limitations for legal malpractice is two years. They correctly point out, however, that in Florida it is the accrual of a cause of action which commences the running of the statute of limitations. Section 95.031, Florida Statutes (1977); see Edwards v. Ford, 279 So.2d 851 (Fla. 1973). Nor do appellants deny that they discovered Miller's alleged negligence by at least April 1975, but they correctly argue that an act of negligence alone does not constitute a cause of action in tort without damages. Prosser, Law of Torts, § 30 at 143 (4th Ed. 1971). Since damages are an essential element of a cause of action for negligence, and since a cause of action for statute of limitation purposes does not accrue until the last element constituting the cause of action occurs, the issue of when legally cognizable damages occurred is dispositive of this case.
Appellants argue that they incurred no legally cognizable damages until December 27, 1977, the date when they were unsuccessful in having the SEMORCO first mortgage set aside. They reason that before the relative priority of the two mortgages was judicially determined, they possessed a mere inchoate claim against Miller. They contend that before December 27, 1977 it appeared probable that the SEMORCO mortgage would be set aside in their favor, in which case the Kellermeyer purchase-money mortgage would become a valid first mortgage, fully secured, and all monies due on the Kellermeyer note could be obtained through foreclosure.
Appellants cite several cases to support their line of reasoning. Johnson v. Mullee, 385 So.2d 1038 (Fla. 1st DCA 1980), rev. denied, 392 So.2d 1377 (Fla. 1981), is a medical malpractice case in which the medical malpractice statute of limitations was similar to the legal malpractice statute involved sub judice. In Johnson a doctor misdiagnosed a patient's cancer, resulting in the *346 patient's death. Although the patient in 1973 had actual knowledge of the doctor's failure to diagnose her cancer, evidence that the cancer had spread beyond her lymph nodes did not appear until February 1975. The court held that the cause of action did not accrue until the damage was discovered. Likewise, in Birnholz v. Blake, 399 So.2d 375 (Fla. 3rd DCA 1981), the client hired attorneys to undertake a suit that was dismissed for want of prosecution. Although the attorneys had failed a second, unconcluded suit for the client on different grounds, the client sued the attorneys for malpractice due to dismissal of the first action. The court held that the client's action was not timely filed because the client was only put on notice of the possible negligence of his attorneys and not of his injury or damages. Since the second suit was still viable, the client might never suffer damage. Also in Pioneer National Title Insurance Co. v. Andrews, 652 F.2d 439 (5th Cir.1981), a title insurance company received an allegedly negligent title opinion from a Florida attorney. The court held that the statute of limitations began to run not when Pioneer discovered the negligence, but when it first incurred the expense of defending itself in a suit brought by an insured client.
Appellee acknowledges the above case authorities but contends that appellants first incurred legally cognizable damages in 1974 when they first incurred fees and costs in the filing of the Minnesota action on their note.
For purposes of our analysis we will assume arguendo that the acts or omissions of Miller in 1973 were negligent.[1] Under this assumption, Miller's alleged negligence consisted of his failure to create an enforceable mechanism to insure that the proceeds of SEMORCO's first mortgage were applied to the improvement of the real property. If the SEMORCO loan had been so applied, it is assumed that the value of the real property would have increased sufficiently to provide security for both the first and second mortgage. However, we must view the transaction as it actually occurred. Immediately after the closing in 1973, Kellermeyer possessed a promissory note secured by a purchase-money mortgage. It is obvious that the note and mortgage possessed by Kellermeyer had a market value at that time. The market value of this species of property is obviously based largely on the value of the real property which provides the security for the note. When Revlis failed to utilize the SEMORCO loan money to improve the real property in question, the security of Kellermeyer's loan was impaired. In our view, there was an immediate diminution in the market value of Kellermeyer's note and mortgage at the instant Revlis diverted the SEMORCO funds. This diminution in value, if proximately caused by the alleged negligence of Miller in not providing a properly enforceable agreement to prevent such an occurrence, supplied the damage element essential to the accrual of a cause of action. All of these facts, including knowledge of the alleged negligence of Miller, were known to appellants by 1975 after suit was filed on the promissory note. Although the exact amount of appellants' damages might not have been foreseen at that time, this is not the test. As the court said in City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954):
The general rule, of course, is that where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.
Id. at 308.
There is a significant distinction between the cases cited by appellants and the case at bar. The cases relied upon by appellants all involve factual situations where the aggrieved party has knowledge of an act of negligence by another party, but no actual damages have occurred. In each of these cases the aggrieved party has only the mere *347 possibility of damage at a later date. In the case sub judice, under our foregoing analysis, damage actually occurred, although the amount remained uncertain, and the aggrieved parties possessed a mere possibility that their damages might have been mitigated.
Kellermeyer's mortgage, by its terms, is a second mortgage, inferior to the lien of SEMORCO. At the time of closing in 1973, Kellermeyer was satisfied with this position. Were it not for the act which directly caused Kellermeyer's damage, i.e., the diversion of the SEMORCO loan funds by Revlis, Kellermeyer, presumably, would not have cared whether his mortgage constituted a first or second lien. It was because appellants were damaged, and knew it, that they attempted to have SEMORCO's first mortgage set aside in the action that culminated on December 27, 1977. Whether, as appellants contend, the probability of success in this suit was high or not, it was clearly an attempt to mitigage damages already sustained. Therefore, we perceive no error in the finding of the court below that appellants' cause of action accrued no later than April 1975, and that this action is barred by the statute of limitations.
AFFIRMED.
LARRY G. SMITH, WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] We express no opinion as to whether Miller was in fact guilty of negligence, or whether Miller's alleged acts and omissions would support a finding of negligence.