[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 98-5447
_____

D.C. Docket No. 97-00414-CV-FAM

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 6, 2001
THOMAS K. KAHN
CLERK

FREMONT INDEMNITY COMPANY, a
California Corporation,

Plaintiff-Appellant,

versus

CAREY DWYER ECKHART MASON & SPRING, P.A.
(f.k.a Carey Dwyer Cole Eckhart Mason & Spring, P.A.)
and MICHAEL C. SPRING,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
**(November 6, 2001)**

Before KRAVITCH and COX, Circuit Judges, and PROPST*, District Judge.

PER CURIAM:

The Florida Supreme Court has responded to a question that we certified in

_____
*Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting
by designation

*Fremont Indemnity Company v. Carey Dwyer Eckhart Mason & Spring, P.A.*, 197 F.3d 1053 (11th Cir. 1999). The facts are more completely recited in that opinion.

Fremont Indemnity Company ("Fremont") filed a legal malpractice action against the attorney-defendants Carey, Dwyer, et al., on February 14, 1997. The malpractice action arose out of Carey, Dwyer's representation of Fremont's insured, an architectural firm. Carey, Dwyer was hired to represent the architectural firm against a claim for damages by Interdevco, the developer of a construction project on which Fremont's insured served as an architect. Fremont and Carey, Dwyer agreed for the purposes of summary judgment that Carey, Dwyer was negligent in rejecting settlement offers, both before and after Interdevco filed suit in state court against the architectural firm in May 1986, without advising or consulting either client.

Carey, Dwyer moved for summary judgment claiming that Florida's two-year statute of limitations had elapsed prior to the institution of this action. The district court granted the motion stating:

> The facts before this Court show that the Plaintiff had knowledge of
> the negligence as early as 1987, and that some damages related to the
> malpractice, which are sought as recoverable, were incurred at least by
> 1989.

2

. . . .

> This Court finds that the evidence presented shows that the Plaintiff first incurred damage from the malpractice well before 2 years prior to the filing of the Complaint. Since the applicable 2 year limitations period was not met, the relief sought in the Complaint should be barred.

On appeal to this court, Fremont contended that summary judgment was inappropriate because the law in Florida as to when the statute of limitations begins to run in "litigation-related" malpractice cases was contrary to the district court's holding. Fremont argued that the recent case of *Silvestrone v. Edell*, 721 So. 2d 1173 (Fla. 1998), announced a "bright-line rule" for the commencement of the statute of limitations in litigation-related malpractice cases: namely, the date of the final resolution of the case out of which the alleged malpractice arises. Consequently, Fremont argued that the action was not time-barred.

In response, Carey, Dwyer argued that the action was time barred because (1) Fremont had notice of the alleged malpractice in 1987; and (2) began sustaining damages because of the alleged malpractice at least by 1989 in the form of attorney fees and costs that it paid because it lost the opportunity to settle the state claim

3

within policy limits. It contended that the "bright-line" rule announced in *Silvestrone* did not apply because there was nothing any party or court could do that would cure the malpractice or redressable harm sustained by Fremont by 1989 because it could not be cured or changed by the trial court judgment or on appeal. Carey, Dwyer relied on the following language in *Breakers of Fort Lauderdale, Ltd. v. Cassel*, 528 So. 2d 985, 986-87 (Fla. Dist. Ct. App. 1988), to support this proposition:

> Damage to Breakers occurred the moment it was called upon to incur the expense of having to continue to defend against a lawsuit that should have been settled but for its attorney's alleged malpractice. That moment – and the accrual of the cause of action for legal malpractice – occurred when Breakers learned that the lawsuit against it had been revived, not, as Breakers urges, when it paid damages to the claimant.

Finally, Carey, Dwyer argued that the statute of limitations attaches as soon an injury is sustained and that the running of the limitations period "is not postponed by the fact that the actual or substantial damages do not occur until a later date." *Citing Keeler Meyer v. Miller*, 427 So. 2d 343, 346 (Fla. Dist. Ct. App. 1983) *and*

4

*City of Miami v. Brooks*, 70 So. 2d 306 (Fla. 1954).

Being unable to totally resolve the possible conflicts in Florida law resulting from a consideration of *Breakers*, *Silvestrone*, and other cases, this court certified the following question to the Supreme Court of Florida:

WHEN DID THE STATUTE OF LIMITATIONS BEGIN TO RUN IN THIS CASE?

After a thorough review of the question, the Supreme Court of Florida held that the statute of limitations began to run at the conclusion of the underlying litigation. *Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A.*, No. SC 99-86, 2001 WL 987342, at *1, --- So. 2d. --- (Fla. Aug. 30, 2001). The Supreme Court of Florida agreed with this court that "'the alleged negligence arises out of the handling of litigation,'" *Id.* at *2 (citation omitted), and consequently, held that the case is controlled by its decision in *Silvestrone*. The Supreme Court of Florida quoted the following language from its *Silvestrone* opinion:

> [W]hen a malpractice action is predicated on errors or omissions committed in the course of litigation, and that litigation proceeds to judgment, the statute of limitations does not commence to run until the litigation is concluded by final judgment. To be specific, we hold that the statute of limitations does not commence to run until the final judgment becomes final.

*Id.* (quoting *Silvestrone*, 721 So. 2d at 1175). The court then stated, "Applying this

5

holding to the present case, we find that the limitations period did not begin to run until the underlying litigation for which Carey, Dwyer was retained by Fremont to defend was final." *Id.*

In light of this opinion, we REVERSE the grant of summary judgment in favor of Carey, Dwyer. We REMAND the case for further proceedings consistent with Florida law as illuminated by the Supreme Court of Florida's answer to our certified question.