PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/06/99
THOMAS  K. KAHN
CLERK**

No. 98-5447

D. C. Docket No. 97-CV-414

FREMONT INDEMNITY COMPANY,

Plaintiff-Appellant,

versus

CAREY DWYER ECKHART MASON &
SPRING, P.A. (f.k.a. CAREY, DWYER, COLE
ECKHART, MASON &  SPRING, P.A.) and
MICHAEL C. SPRING,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

**(December 6, 1999)**

Before COX, Circuit Judge, KRAVITCH, Senior Circuit Judge, and PROPST*,
Senior District Judge.

_____
*Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama,
sitting by designation.

PER CURIAM

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA.

TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Eleventh Circuit that this case presents an important issue of Florida law that has not been directly addressed by the Supreme Court of Florida. Accordingly, we believe the issue is appropriate for resolution by Florida's highest court and defer our decision in this case pending certification of the issue to the Supreme Court of Florida. To frame this issue for that Court's review, we offer the following.

## STATEMENT OF ISSUE

Whether the plaintiff Fremont Indemnity Company's (Fremont) action for legal malpractice against the attorney defendants Carey, Dwyer, et al. (Carey, Dwyer) and a Carey, Dwyer attorney, Michael C. Spring (Spring), (sometimes collectively Carey, Dwyer), is barred by the two-year limitation period imposed by Fla. Stat. Ann. § 95.11(4)(a), where (1) the alleged malpractice complained of consists of alleged errors and omissions in the handling of the defense of claims against Fremont's insured, after Carey, Dwyer was retained by Fremont to defend its insured, before and after a Florida state court legal action against Fremont's

2

insured; (2) Fremont's specific claim of malpractice in this case is that, both prior to and after the filing of the said state court action against its insured, Carey, Dwyer failed to advise Fremont of settlement offers made by the claimant to Spring which Fremont could have accepted and held down its payments and costs; (3) Fremont incurred additional costs of defense after it had notice of the alleged malpractice and had terminated the services of Carey, Dwyer all occurring more than two years before this action was filed; (4) the litigation in the said state court action was still pending at the time the action in this case was filed; and (5) Fremont's total additional costs of defense had not reached its policy limits, for which the case could have arguably been settled, at the time this action was filed.

COURSE OF PROCEEDINGS IN THIS CASE

The parties have agreed to the following. On February 14, 1997, Fremont, a liability insurer, filed a complaint in this action against Carey, Dwyer and Spring. Counts I-III were for legal malpractice in the handling of the defense of claims against Fremont's insured, phrased in the state court action as breach of contract, professional negligence and breach of fiduciary duty claims. Count IV was for indemnity. The basis of jurisdiction is diversity of citizenship and Florida law applies. The indemnity claim was dismissed by the trial court. Fremont's notice of appeal covered that ruling as an additional ground of appeal. Fremont does not,

3

however, proceed further as to the propriety of the ruling on Count IV. Carey, Dwyer and Spring answered Counts I-III of the complaint on April 8, 1997, and on September 12, 1997 moved for summary judgment on those three counts, claiming that Florida's two-year statute of limitations on the malpractice claims had elapsed prior to the institution of this action. The district court granted the motion.

## SUMMARY OF FACTS[1]

Fremont hired Spring and Carey, Dwyer to represent itself and its insured architectural firm against a claim for damages by Interdevco, the developer of a construction project on which Fremont's insured served as an architect. The parties have agreed, for the purposes of the motion for summary judgment, that Spring was negligent in rejecting settlement offers, both before and after Interdevco filed suit in state court against Fremont's insured in May 1986, without advising or consulting either client.

In 1985, Fremont discovered the negligence. It retained new counsel and terminated the Carey, Dwyer representation. Interdevco thereafter refused

---

[1] The parties have agreed to the more completely stated factual assertions in the trial court's opinion

Fremont's settlement offers. By 1987, Fremont had incurred costs of litigation over and above what it had paid Carey, Dwyer.

In June 1991, the Resolution Trust Corporation (RTC) which had taken over loan(s) of the construction lender on the project, entered into a settlement agreement with Interdevco which included a judgment for $8,936,911.00 against Interdevco and an assignment of Interdevco's cause(s) of action against Fremont's insured and Fremont. On February 21, 1995, Fremont paid RTC $4.5 million and received RTC's said judgment and assignment. In March 1995, Fremont agreed with its insured to pay any judgment which might be obtained against its insured by Interdevco Co. in the state court action. Fremont was unsuccessful in collateral litigation in which it attempted to establish that it had authority to direct Interdevco Co. to dismiss the state court action against its insured. On February 14, 1997, Fremont filed the instant action against Carey, Dwyer and Spring.

The underlying litigation which Carey, Dwyer was retained by Fremont to defend was still pending as of September 27, 1999, but at oral argument before the Eleventh Circuit Court of Appeals on September 30, 1999, Fremont announced that the case had been settled by its paying an additional amount.

## CONCLUSION OF THE TRIAL COURT IN THIS CASE

5

"The present case falls within the category of cases ... where damages, although speculative as to final amount, are actually sustained. The facts before this Court show that the Plaintiff had knowledge of the negligence as early as 1987, and that some damages related to the malpractice, which are sought as recoverable, were incurred at least by 1989. The Plaintiff's reliance on the payment to RTC or the possible outcome of other actions is misplaced where there is no dispute that the failure by counsel (the malpractice) clearly resulted in some damage to the Plaintiff prior to February, 1995. ..........

This Court finds that the evidence presented shows that the Plaintiff first
incurred damage from the malpractice well before 2 years prior to the filing of the Complaint. Since the applicable 2 year limitations period was not met, the relief sought in the complaint should be barred."

CONTENTIONS OF PARTIES

Fremont

Fremont contends that at the time the district court granted summary

judgment in this case, the law in Florida as to when the statute of limitations begins

to run in "litigation-related" malpractice cases was in doubt, but that the weight of

Florida opinion was that the statute of limitations period did not begin to run until

the underlying case involving the alleged malpractice had been fully adjudicated.

Fremont further argues that the recent case of Silvestrone v. Edell, 721 So.2d 1173

(Fla. 1998) is decisive. Silvestrone announced a "bright-line rule" for the

commencement of the statute of limitations in litigation-related malpractice cases:

namely, the resolution of the case out of which the alleged malpractice arises.

6

Fremont argues that the action in this case was not time-barred, but was actually filed prematurely.

Fremont further argues that under Florida law even prior to <u>Silvestrone</u> it is clear that the statute of limitations period would not begin to run until it had incurred additional costs

exceeding the two million dollars policy limits for which the case could have arguably been settled.

<u>Carey, Dwyer</u>

Carey, Dwyer argues that the action in the case is time barred because (1) Fremont had notice of the alleged malpractice in 1987; and (2) began sustaining damages because of the alleged malpractice at least by 1989 in the form of attorney fees and costs that it paid because it lost the opportunity to settle the state court claim within policy limits. Carey, Dwyer argues that the "bright-line" rule announced in <u>Silvestrone</u> does not apply here because there is nothing any party or court could do that would cure the malpractice or redressable harm sustained by Fremont by 1989 because it could not be cured or changed by a trial court judgment or on appeal. Carey, Dwyer and Spring admit, for the purposes of the

7

motion for summary judgment in this case only, that there is sufficient evidence of malpractice by them.

DISCUSSION

In Silvestrone, the plaintiff Silvestrone filed a legal malpractice claim against Edell based on alleged deficiencies in Edell's performance during the course of representing him in an antitrust action. The malpractice action was filed less than one year after final judgment in the antitrust case, but more than two years after the jury verdict in the antitrust case. The District Court of Appeal of Florida, Fifth District, held that the legal malpractice claim was barred by the two year limitation period because Silvestrone knew about the alleged malpractice when the jury returned an unsatisfactory verdict, and Silvestrone had instructed his attorney to take no action regarding it. Entry of judgment was delayed by attorney fee requests and the post-verdict motions of other parties.

The Supreme Court of Florida agreed with a holding in Zakak v. Broida and Napier, P.A., 545 So.2d 380 (Fla. 2d DCA 1989) and reversed the District Court of Appeal Silvestrone decision. The Court stated:

> ...[W]e agree with the reasoning of the Second District Court of Appeal that when a malpractice action is predicated on errors or omissions committed in the course of

8

litigation, and that litigation proceeds to judgment, the statute of limitations does not commence to run until the litigation is concluded by final judgment. To be specific, we hold that the statute of limitations does not commence to run until the final judgment becomes final.

721 So.2d at 1175.

The Court further noted,

> For instance, a judgment becomes final either upon the expiration of the time for filing an appeal or post-judgment motions, or, if an appeal is taken, upon the appeal being affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing.

Id. at 1175 n.2.

The Court continued:

> To be liable for malpractice arising out of litigation, the attorney must be the proximate cause of the adverse outcome of the underlying action which results in damage to the client. See Sure Snap Corp. v. Baena, 705 So.2d 46, 48 (Fla. 3d DCA 1997). Since redressable harm is not established until final judgment is rendered, see Chapman v. Garcia, 463 So.2d 528, 529 (Fla. 3d DCA 1985) (holding that plaintiffs could not sue attorneys for legal malpractice so long as underlying medical malpractice action, out of which legal malpractice claim arose, was still pending in trial court or on appeal); Abbott v. Friedsam,

9

682 So.2d 597, 600 n.1 (Fla. 2d DCA 1996) (stating in dicta that statute of limitations for legal malpractice generally does not begin to run until legal proceedings underlying malpractice claim have been finalized, by appeal if necessary), a malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client.

Id. at 1175.

The Court added:

This bright-line rule will provide certainty and reduce litigation over when the statute starts to run. Without such a rule, the courts would be required to make a factual determination on a case by case basis as to when all the information necessary to establish the enforceable right was discovered or should have been discovered.

Id. at 1176.

The instant case involves threatened litigation and actual litigation and the action in this case was clearly not filed more than two years after a final judgment in the underlying litigation. Carey, Dwyer argues that the facts here, however, are arguably distinguishable from those in Silvestrone in that in Silvestrone there were no apparent damages which resulted from any alleged malpractice other than that manifested by a complained of verdict and judgment. Here, the plaintiff Fremont arguably began to have "redressable harm" through additional costs incurred by it

10

after it was denied an opportunity to settle the case for policy limits. Carey, Dwyer

relies on language in <u>Breakers of Fort Lauderdale, Ltd. v. Cassel</u>, 528 So.2d 985,

986-87 (Fla. 3d DCA 1988), a case not mentioned in <u>Silvestrone</u>. There the court

stated:

> We note, however, that the trial court was correct in rejecting the alternative argument of Breakers of Fort Lauderdale, Ltd., [Breakers] that the statute of limitations did not begin to run until May 23, 1996, when the lawsuit which Cassel allegedly improperly failed to settle was concluded with Breakers having to pay a substantially greater amount than the amount contained in the earlier agreed upon, but unconsummated, settlement. Damage to Breakers occurred the moment it was called upon to incur the expense of having to continue to defend against a lawsuit that should have been settled but for its attorney's alleged malpractice. That moment–and the accrual of the cause of action for legal malpractice–occurred when Breakers learned that the lawsuit against it had been revived, not, as Breakers urges, when it paid damages to the claimant. The court's opinion in <u>Diaz v. Piquette</u>, 496 So.2d 239 (Fla. 3d DCA 1986), <u>review denied</u>, 506 So.2d 1042 (Fla. 1987), upon which Breakers relies, addresses the question of when a cause of action for legal malpractice accrues against an attorney who has lost a case at trial, not the question of when a cause of action for legal malpractice accrues against an attorney who has allegedly improperly failed to consummate the settlement of a case. In the former situation, as Diaz correctly holds, there can be no claim of malpractice until the loss determined at trial is made final on appeal; in the latter and present situation, one need not await the eventual result of the lawsuit that should have been settled to determine that the failure to complete the settlement is malpractice and that damage from that failure, although not then completely ascertainable, is

11

immediate. See City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954).

Carey, Dwyer argues, "similarly, in this case, Fremont's cause of action accrued the moment it was called upon to incur the expense of having to continue to defend against a lawsuit that should have been settled but for its attorney's malpractice (1987) and its attorney committed malpractice which caused those damages (1989)."

Carey, Dwyer also argues that the statute of limitations attaches as soon as an injury is sustained and that the running of the limitation period "is not postponed by the fact that the actual or substantial damages do not occur until a later date," citing Keeler Meyer v. Miller, 427 So.2d 343, 346 (Fla. lst DCA 1983) and City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954). The district court in this action distinguished cases where the plaintiff has knowledge of actual harm from those cases where the plaintiff only has knowledge of potential harm, further citing Throneburg v. Boose, Casey et al., 659 So.2d 1134 (Fla. 4th DCA 1995), review dismissed, 664 So.2d 248 (Fla. 1995), and Edwards v. Ford, 279 So.2d 851 (Fla. 1973). The district court also relied upon Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla. 1990) which Silvestrone has styled a "transactional malpractice" case.

Carey, Dwyer argues that, unlike Silvestrone, this is not a "litigation-related malpractice" case. This argument is apparently premised on such language as in Eldred v.Reber, 639 So.2d 1086, 1087 n.1 (Fla. 5th DCA 1994), and Roger Zitrin, M.D., P.A. v. Glaser, 621 So.2d 748, 749 (Fla. 4th DCA 1993) to the effect that "litigational malpractice refers to error committed in the course of litigation which might be changed on appeal." Carey, Dwyer argues that the issues relating to additional costs incurred by Fremont cannot "be changed on appeal," thus this is not a "litigational malpractice" action.

Zitrin may be distinguishable in that the alleged negligence did not, itself, arise out of litigation. The alleged negligence arose out of the preparation of an employment agreement. Here, the alleged negligence arises out of the handling of litigation. Here, the total damages would have been finally determined by the very litigation out of which the malpractice claim arises.

With regard to Fremont's argument that the alleged damages resulting from the additional costs incurred after notice of the malpractice did not, more than two years prior to the filing of this action, exceed its two million dollar policy limits, we note that while the district court found that Fremont had incurred some "damage from the malpractice well before 2 years prior to the

13

filing of the complaint" in this action, it did not find that said damage equaled or exceeded Fremont's policy limits. No such determination can be made from the record.

## CERTIFICATION

We are unable to totally resolve the possible conflicts in Florida law resulting from a consideration of <u>Breakers</u> and other cases and <u>Silvestrone</u>. Thus, this court certifies the following question to the Supreme Court of Florida:

WHEN DID THE STATUTE OF LIMITATIONS BEGIN TO RUN IN THIS CASE?

The phrasing of this question is not intended to limit the Supreme Court in considering the issue presented or the manner in which it gives its answer. The entire record in this case and the briefs of the parties will be transmitted to the Supreme Court of Florida for assistance in answering this question.

## QUESTION CERTIFIED