796 So.2d 504 (2001)
FREMONT INDEMNITY COMPANY, Appellant,
v.
CAREY, DWYER, ECKHART, MASON & SPRING, P.A., etc., et al., Appellees.
No. SC99-86.
Supreme Court of Florida.
August 30, 2001.
Rehearing Denied October 16, 2001.
Hendrik G. Milne, Craig P. Kalil, and Silvia M. Garrigo of Abilli, Milne, Kalil & Garrigo, P.A., Miami, FL, for Appellant.
Scott A. Cole of Josephs, Jack & Gaebe, P.A., Miami, FL, for Appellees.
HARDING, J.
We have for review a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit as determinative of a cause pending before that court and for which there is no controlling precedent. Specifically, the court of appeals has certified the following question to this Court:
WHEN DID THE STATUTE OF LIMITATIONS BEGIN TO RUN IN THIS CASE?
Fremont Indemnity Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 197 F.3d 1053 (11th Cir.1999). We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution. For the reasons expressed below, we hold that the statute of limitations began to run at the conclusion of the underlying litigation.
*505 The facts of this case, as set forth by the court of appeals, are as follows:
On February 14, 1997, Fremont, a liability insurer, filed a complaint in this action against Carey, Dwyer and Spring. Counts I-III were for legal malpractice in the handling of the defense of claims against Fremont's insured, phrased in the state court action as breach of contract, professional negligence and breach of fiduciary duty claims. Count IV was for indemnity. The basis of jurisdiction is diversity of citizenship and Florida law applies. The indemnity claim was dismissed by the trial court. Fremont's notice of appeal covered that ruling as an additional ground of appeal. Fremont does not, however, proceed further as to the propriety of the ruling on Count IV. Carey, Dwyer and Spring answered Counts I-III of the complaint on April 8, 1997, and on September 12, 1997 moved for summary judgment on those three counts, claiming that Florida's two-year statute of limitations on the malpractice claims had elapsed prior to the institution of this action. The district court granted the motion.
SUMMARY OF FACTS
Fremont hired Spring and Carey, Dwyer to represent itself and its insured architectural firm against a claim for damages by Interdevco, the developer of a construction project on which Fremont's insured served as an architect. The parties have agreed, for the purposes of the motion for summary judgment, that Spring was negligent in rejecting settlement offers, both before and after Interdevco filed suit in state court against Fremont's insured in May 1986, without advising or consulting either client.
In 1985, Fremont discovered the negligence. It retained new counsel and terminated the Carey, Dwyer representation. Interdevco thereafter refused Fremont's settlement offers. By 1987, Fremont had incurred costs of litigation over and above what it had paid Carey, Dwyer.
In June 1991, the Resolution Trust Corporation (RTC) which had taken over loan(s) of the construction lender on the project, entered into a settlement agreement with Interdevco which included a judgment for $ 8,936,911.00 against Interdevco and an assignment of Interdevco's cause(s) of action against Fremont's insured and Fremont. On February 21, 1995, Fremont paid RTC $ 4.5 million and received RTC's said judgment and assignment. In March 1995, Fremont agreed with its insured to pay any judgment which might be obtained against its insured by Interdevco Co. in the state court action. Fremont was unsuccessful in collateral litigation in which it attempted to establish that it had authority to direct Interdevco Co. to dismiss the state court action against its insured. On February 14, 1997, Fremont filed the instant action against Carey, Dwyer and Spring.
The underlying litigation which Carey, Dwyer was retained by Fremont to defend was still pending as of September 27, 1999, but at oral argument before the Eleventh Circuit Court of Appeals on September 30, 1999, Fremont announced that the case had been settled by its paying an additional amount.
Fremont, 197 F.3d at 1054-55. On appeal, the court of appeals certified the above question to our Court.
We agree with the court of appeals that "the alleged negligence arises out of the handling of litigation," see id. at 1058, and therefore this case is controlled by our recent decision in Silvestrone v. Edell, 721 *506 So.2d 1173 (Fla.1998). In Silvestrone, this Court held:
[W]hen a malpractice action is predicated on errors or omissions committed in the course of litigation, and that litigation proceeds to judgment, the statute of limitations does not commence to run until the litigation is concluded by final judgment. To be specific, we hold that the statute of limitations does not commence to run until the final judgment becomes final.
721 So.2d at 1175. Applying this holding to the present case, we find that the limitations period did not begin to run until the underlying litigation for which Carey, Dwyer was retained by Fremont to defend was final.
We address two specific arguments that were raised by Carey, Dwyer in this case. First, we reject Carey, Dwyer's claim that Fremont began sustaining damages at least by 1989 in the form of attorney's fees and costs that it had paid because it lost the opportunity to settle the state court claim within the policy limits. Carey, Dwyer asserts that Silvestrone does not apply because there is nothing any party or court could do that would cure the redressable harm sustained by Fremont by 1989 because it could not be cured or changed by trial court judgment or on appeal. We disagree. As we pointed out in Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido, 790 So.2d 1051 (Fla.2001), in some circumstances, the underlying litigation
may have a bearing on such damages, as the possibility exists that if the clients prevail, the clients can collect the attorney's fees from the losing party pursuant to a statutory or contractual provision. See Dade County v. Pena, 664 So.2d 959, 960 (Fla.1995) ("This Court follows the `American Rule' that attorney's fees may only be awarded by a court pursuant to an entitling statute or an agreement of the parties.").
Moreover, the present case is a classic example of why redressable harm cannot be determined until the conclusion of the litigation. Carey, Dwyer alleges that Fremont had to pay attorney's fees and costs to defend a lawsuit that it otherwise could have settled. The settlement would have cost Fremont two million dollars. As Fremont points out in its brief, prior to the conclusion of the litigation, there was the potential of a lower settlement or judgment. Hence, even including the additional costs and fees, the possibility existed that Fremont would not suffer any redressable harm.
Second, Carey, Dwyer relies on the following language from Breakers of Fort Lauderdale, Ltd. v. Cassel, 528 So.2d 985, 986-87 (Fla. 3d DCA 1988):
We note, however, that the trial court was correct in rejecting the alternative argument of Breakers of Fort Lauderdale, Ltd., [Breakers] that the statute of limitations did not begin to run until May 23, 1996, when the lawsuit which Cassel allegedly improperly failed to settle was concluded with Breakers having to pay a substantially greater amount than the amount contained in the earlier agreed upon, but unconsummated, settlement. Damage to Breakers occurred the moment it was called upon to incur the expense of having to continue to defend against a lawsuit that should have been settled but for its attorney's alleged malpractice. That moment and the accrual of the cause of action for legal malpracticeoccurred when Breakers learned that the lawsuit against it had been revived, not, as Breakers urges, when it paid damages to the claimant.
For the reasons stated above, we disapprove Breakers to the extent that the opinion *507 is inconsistent with Silvestrone and our opinion in this case.
Accordingly, we hold that the statute of limitations began to run in this case when the underlying litigation was final. Having answered the certified question, we return this case to the United States Court of Appeals for the Eleventh Circuit for further proceedings.
It is so ordered.
SHAW, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ, concur.
WELLS, C.J., dissents with an opinion.
WELLS, C.J., dissenting.
I do not join in the majority opinion because I conclude that the premise upon which the majority bases its decision is erroneous. The basis of the majority's determination is that the "malpractice action is predicated on errors or omissions committed in the course of litigation" and therefore "the statute of limitations does not commence to run until litigation is concluded by final judgment." Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998). This statement is too superficial a basis upon which to rest a determination of when the statute of limitations commences, and it does not correctly explain why I joined the majority in Silvestrone.
This statute-of-limitations issue, like others, has to be founded upon when the cause of action accrues. In a malpractice action, which is a negligence action, the cause of action accrues when there is a breach of duty which proximately causes damage. In several malpractice actions similar to those in Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990), and our recent decision in Blumberg v. USAA Casualty Ins. Co., 790 So.2d 1061 (Fla.2001), the cause of action does not arise until the end of underlying litigation because the result of that underlying litigation could result in the elimination of the claimed damages. In other words, the damages element of the negligence has not accrued because its existence is contingent on the result of the underlying litigation.
There is, however, a material difference between damages which are totally contingent upon a determination in the underlying litigation and a situation in which some damages are incurred and thereby fixed, and what is to be determined in the underlying litigation is the full extent of the damages. In the latter situation, the cause of action accrues and the statute of limitations begins to run from the moment some damages are definitively incurred, regardless of the effect the underlying litigation may have on the extent of these damages. This has long been the accepted rule under Florida law, and I think it unwise to depart from it. In 1983, the First District in Kellermeyer v. Miller, 427 So.2d 343, 345-47 (Fla. 1st DCA 1983), sets forth Florida law as to this point.
Nor do appellants deny that they discovered Miller's alleged negligence by at least April 1975, but they correctly argue that an act of negligence alone does not constitute a cause of action in tort without damages. Prosser, Law of Torts, § 30 at 143 (4th Ed.1971). Since damages are an essential element of a cause of action for negligence, and since a cause of action for statute of limitation purposes does not accrue until the last element constituting the cause of action occurs, the issue of when legally cognizable damages occurred is dispositive of this case.
. . . .
... All of these facts, including knowledge of the alleged negligence of Miller, were known to appellants by 1975 after suit was filed on the promissory note. Although the exact amount of appellants' damages might not have been *508 foreseen at that time, this is not the test. As the court said in City of Miami v. Brooks, 70 So.2d 306 (Fla.1954):
The general rule, of course, is that where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do no occur until a later date.

Id. at 308.
There is a significant distinction between the cases cited by appellants and the case at bar. The cases relied upon by appellants all involve factual situations where the aggrieved party has knowledge of an act of negligence by another party, but no actual damages have occurred. In each of these cases the aggrieved party has only the mere possibility of damage at a later date. In the case sub judice, under our foregoing analysis, damage actually occurred, although the amount remained uncertain, and the aggrieved parties possessed a mere possibility that their damages might have been mitigated.
Kellermeyer's mortgage, by its terms, is a second mortgage, inferior to the lien of SEMORCO. At the time of closing in 1973, Kellermeyer was satisfied with this position. Were it not for the act which directly caused Kellermeyer's damage, i.e., the diversion of the SEMORCO loan funds by Revlis, Kellermeyer, presumably, would not have cared whether his mortgage constituted a first or second lien. It was because appellants were damaged, and knew it, that they attempted to have SEMORCO's first mortgage set aside in the action that culminated on December 27, 1977. Whether, as appellants contend, the probability of success in this suit was high or not, it was clearly an attempt to mitigate damages already sustained. Therefore, we perceive no error in the finding of the court below that appellant's cause of action accrued no later than April 1975, and that this action is barred by the statute of limitations.
In accord with this analysis, the correct analysis begins with a determination of when some damages become fixed regardless of whether the amount of the damages is affected by the outcome of underlying litigation.
The Third District, in Breakers of Fort Lauderdale, Ltd. v. Cassel, 528 So.2d 985 (Fla. 3d DCA 1988), recognized this crucial distinction with regard to the establishment of the damages element. In Breakers, in dealing with circumstances analogous to the instant situation, the Third District opined:
We note, however, that the trial court was correct in rejecting the alternative argument of Breakers of Fort Lauderdale, Ltd., [Breakers] that the statute of limitations did not begin to run until May 23, 1986, when the lawsuit which Cassel allegedly improperly failed to settle was concluded with Breakers having to pay a substantially greater amount than the amount contained in the earlier agreed upon, but unconsummated, settlement. Damage to Breakers occurred the moment it was called upon to incur the expense of having to continue to defend against a lawsuit that should have been settled but for its attorney's alleged malpractice. That momentand the accrual of the cause of action for legal malpracticeoccurred when Breakers learned that the lawsuit against it had been revived, not, *509 as Breakers urges, when it paid damages to the claimant. The court's opinion in Diaz v. Piquette, 496 So.2d 239 (Fla. 3d DCA 1986), review denied, 506 So.2d 1042 (Fla.1987), upon which Breakers relies, addresses the question of when a cause of action for legal malpractice accrues against an attorney who has lost a case at trial, not the question of when a cause of action for legal malpractice accrues against an attorney who has allegedly improperly failed to consummate the settlement of a case. In the former situation, as Diaz correctly holds, there can be no claim of malpractice until the loss determined at trial is made final on appeal; in the latter and present situation, one need not await the eventual result of the lawsuit that should have been settled to determine that the failure to complete the settlement is malpractice and that damage from that failure, although not then completely ascertainable, is immediate. See City of Miami v. Brooks, 70 So.2d 306 (Fla.1954).
Id. at 986-87. The majority in this case errs in disapproving Breakers and unnecessarily disturbs this area of settled law.
The United States District Court in this proceeding was likewise correct in its analysis based upon Breakers. The Eleventh Circuit Court of Appeals quoted the conclusion of the United States District Court:
The present case falls within the category of cases ... where damages, although speculative as to final amount, are actually sustained. The facts before this Court show that the Plaintiff had knowledge of the negligence as early as 1987, and that some damages related to the malpractice, which are sought as recoverable, were incurred at least by 1989. The Plaintiff's reliance on the payment to RTC or the possible outcome of other actions is misplaced where there is no dispute that the failure by counsel (the malpractice) clearly resulted in some damage to the Plaintiff prior to February, 1995....
This Court finds that the evidence presented shows that the Plaintiff first incurred damage from the malpractice well before 2 years prior to the filing of the Complaint. Since the applicable 2 year limitations period was not met, the relief sought in the complaint should be barred.
Fremont Indemnity Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 197 F.3d 1053, 1055 (11th Cir.1999).
Carey, Dwyer's alleged failure to communicate the settlement offers resulted in damages to Fremont which were not dependent on the underlying litigation. The fixed damages were the cost of continuing to defend claims which would not have been incurred if the settlement offers had been communicated to Fremont and the claims had been settled. Fremont incurred the damages of defending the architectural firm regardless of the outcome of the underlying litigation as to whether the architect had any liability to the developer. In its brief, appellant Fremont states that the uncontroverted facts before the district court were:
During the deposition of Alan Faigin, Secretary and General Counsel of Fremont General Corporation, taken on August 26, 1997, counsel stipulated that Fremont was aware of the alleged malpractice committed by the Defendants at the very least by August 12, 1987, which was the date Spring was terminated. Faigin stated, as set forth in the Complaint, that but for Spring's negligence, Fremont has been damaged by ongoing defense costs and fees which would not have been incurred.
Faigin testified that Fremont was not aware of the fact that offers to settle for *510 policy limits were made until the April 23, 1987 letter from Spring. According to Faigin, when the letter was received, Fremont retained separate counsel for itself immediately. After the file was reviewed, and another law firm chosen, separate counsel was appointed for the insureds.
Faigin stated that it was "generally right" that if Spring had done the things which he is alleged not to have done in the case that Fremont would have been in a position to respond to the settlement demands, pay its $2 million limit and be done with the case. He added that some of the expenses incurred after Spring was terminated would have been incurred in any event, but that some would not have been. Faigin could not be precise as to the amount of damages sought for fees incurred by Fremont for other counsel due to Spring's improper handling of the case, but estimated it in the hundreds of thousands of dollars. This amount represented the sum over and above what would have been the amount charged to Fremont by Spring had he performed properly.
The cost of defense damages could not be extinguished by a decision on the architect's liability, which is a part of the indemnity contract section of Fremont's insurance contract. Fremont owed the architect a defense under a separate part of the contract, and that defense depended only on the claim continuing, not on whether the architect had committed an error or omission.
The present majority incorrectly applies Silvestrone to this case because the uncontroverted facts here are entirely distinguishable.[1] In Silvestrone, the gravamen of the malpractice was a court award which was based on a jury verdict. The jury verdict and resulting final judgment constituted the damages element of the cause of action. These damages were contingent and plainly not fixed until the final judgment became final through disposition of post-judgment motions and appeals because the damages were vulnerable to being set aside and thereby eliminated. Therefore, in that circumstance, the accruing of the cause of action is dependent on the underlying litigation. In this instance, however, nothing in the underlying litigation between the architect and the developer would make the additional cost of defense expended by Fremont disappear. Thus, some damages were proximately caused by the alleged malpractice of Carey, Dwyer, and the statute of limitations began to run from the date the failure to communicate the settlement demand was learned by Fremont. I would not disapprove Breakers. Accordingly, I respectfully dissent.
NOTES
[1] I recognize that Judge Sharp's dissent in the Fifth District Court of Appeal's decision in Silvestrone v. Edell, 701 So.2d 90 (Fla. 5th DCA 1997), expressly notes that one of the bases of Silvestrone's claims against his attorneys was the failure to remit settlement offers. See id. at 92. However, our decision in Silvestrone did not consider the failure to remit settlement offers aspect of damages. Rather, Silvestrone focused on damages that could have been eliminated by the outcome of the underlying litigation. Therefore, Silvestrone should not be dispositive in this instance, and to the extent it confuses these issues by its bright line language, I would recede from that language.