LEWIS, J.,
dissenting.
I dissent because I am in substantial agreement with the logical, reasonable analysis provided by the Second District Court of Appeal below, which provided an intellectually sound holding:
*53 On the merits, this case is controlled by Silvestrone because it involves legal malpractice that arises out of the handling of litigation. See Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So.2d 504, 505-06 (Fla.2001). In Silvestrone, the Florida Supreme Court resolved a conflict between the district courts regarding whether the statute of limitations for legal malpractice begins to run when [1] the jury renders the verdict or [2] when the court enters the final judgment. See Silvestrone v. Edell, 721 So.2d 1173, 1174 (Fla.1998). The court adopted a “bright-line rule” that the statute of limitations would begin to run when “the litigation is concluded by final judgment.” Id. at 1175-76. The court explained that this happens when the final judgment becomes final after the time for filing an appeal expires or the appeals process is concluded. Id. at 1175 n. 2.
The court reasoned that liability for malpractice requires that the attorney be the proximate cause of the adverse outcome of the underlying litigation. Id. at 1175. The court explained that because “redressable harm is not established until final judgment is rendered, a malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client.” Id. (citations omitted). Because posttrial motions could affect the plaintiff’s rights or liabilities, the statute of limitations does not begin to run until those rights or liabilities are finally determined. Id. at 1175.
Applying Silvestrone to the facts of this case, we conclude that the trial court erred in determining that the statute of limitations began to run before the parties filed a stipulation to dismiss the underlying [patent-infringement] action with prejudice. The Silvestrone court’s “bright-line rule” was that that the statute of limitations begins to run when “the litigation is concluded by final judgment.” Under the particular facts in Silvestrone, the litigation was concluded when the final judgment became final. In this case, however, the litigation was not concluded until the parties filed the stipulation to dismiss the underlying action with prejudice. ...
... [A] narrow reading of Silvestrone would defeat the very policy concerns the supreme court sought to address in not only that case, but also in [related] jurisprudence....
[[Image here]]
The policy concerns articulated by the supreme court in Peat, Marwick and Blumberg are equally applicable to litigation malpractice actions in which a final judgment has become final for purposes of appeal but postjudgment motions for attorneys’ fees are pending.[11] In such actions, the client does not incur damages until the conclusion of the [underlying or] related judicial proceedings when the amount of attorneys’ fees has been finally established. Until the case is fully resolved, there is a chance that the appeals process could result in a reversal of the original decision that established an injury.
Furthermore, parties in such actions would be forced to argue inconsistent positions if they were required to file the malpractice action before resolution of attorneys’ fees in the underlying action. In the malpractice action in this case, TSE would have argued that they did *54 not have a proper basis for filing the patent infringement action. In the ongoing patent infringement action, TSE would have argued that they did have a proper basis for the action.
In the same vein, forcing an aggrieved party to file a legal malpractice action before the underlying litigation is resolved would also create a conflict of interest that would undoubtedly require counsel to withdraw from representation in the underlying action. This would place the aggrieved party in the untenable position of having to hire new counsel who was unfamiliar with the case to continue the litigation or pursue negotiations at the last hour. This would also take away the opportunity for counsel to correct his or her mistakes in the underlying action.
TSE Indus., Inc. v. Larson & Larson, P.A., 987 So.2d 687, 690-92 (Fla. 2d DCA 2008) (emphasis supplied).
In contrast, today, a majority of this Court has severely undermined the principles of effective jurisprudence and conflict-avoidance that underlie our controlling precedent in Fremont Indemnity Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So.2d 504 (Fla.2001), Blumberg v. USAA Casualty Insurance Co., 790 So.2d 1061 (Fla.2001), Silvestrone v. Edell, 721 So.2d 1173 (Fla.1998), and Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1823 (Fla.1990). The majority adopts an artificial, simplistic approach to an issue that is more complex and demands a far more searching analysis. A cause of action for litigation-related malpractice simply does not accrue under Florida law until redressable harm is definitively established. See, e.g., Coble v. Aronson, 647 So.2d 968, 970 (Fla. 4th DCA 1994) (citing Peat, Marwick, 565 So.2d at 1323). In this context, it has long been recognized that such harm is not established until the conclusion of the underlying litigation. See, e.g., Fremont, 796 So.2d at 506. The essential flaw in the majority’s reasoning and holding is that it fails to recognize the full extent of the relevant “underlying litigation.” The “twist” that this case presents with regard to the “sanctions” issue entirely undermines the logic and reasoning of the majority.
Larson’s alleged malpractice permeated the entirety of the federal patent-infringement proceedings below. Reduced to its essence, TSE has contended, and continues to contend, that Larson’s alleged malpractice consisted of improper, incorrect legal advice and shoddy (potentially unethical) legal representation with regard to the validity vel non of TSE’s mold-release patent. This legal advice, and Larson’s conduct during the federal patent-infringement action, not only (1) “resulted in ... a jury trial ... that in all probability would have been avoided had the improper conduct not occurred,” [12] but also, (2) prompted the federal defendant’s request for— and the federal district court’s later grant of — attorneys’-fee sanctions against TSE pursuant to 35 U.S.C. § 285.[13] Having parsed Larson’s pedantic, rigid contentions (which supply the principle basis of the majority opinion), it is clear to me that even this law firm recognizes that the patent-infringement litigation did not truly conclude until October 10, 2002, when the *55 “sanctions” dispute ended with the parties entering into a settlement and filing a stipulation to dismiss the underlying patent-infringement action with prejudice. Rather than quibble with this established fact, Larson and the majority seek to artificially cordon off this later, exceedingly important and significant “sanctions” portion of the underlying litigation from the federal district court’s judgment on the merits, which was entered on August 16, 2002,[14] and became final for purposes of appeal on September 16, 2002. This peculiar dissection is an act of sophistry.
Larson’s alleged malpractice was the focus of both the merits judgment and the “sanctions” proceeding, each of which was a component of the same underlying federal patent-infringement litigation. This federal litigation was the single transaction or occurrence resulting in Larson’s alleged malpractice, and the entire matter was not concluded until a stipulation of the parties on October 10, 2002. Instead of forcing a square peg into a round hole, as the majority has done by failing to properly identify when the relevant litigation ended, I would recognize the broader, controlling rule and logic that undergird Silvestrone and related precedent: Redressable harm is not definitively established — and a cause of action for litigation-related malpractice does not accrue — zmtil the underlying litigation is concluded. See, e.g., Fremont, 796 So.2d at 506-07 (holding that a cause of action for litigation-related malpractice did not accrue until the pertinent litigation concluded even though the client was aware that some level of deficient representation occurred approximately one decade earlier when it dismissed and replaced its negligent counsel). Tellingly, the majority’s approach in this case is substantially similar to that which we definitively rejected in Fremont. See Fremont, 796 So.2d at 507 (Wells, J., dissenting) (“There is ... a material difference between [1] damages which are totally contingent upon a determination in the underlying litigation and [2] a situation in which some damages are incurred and thereby fixed, and what is to be determined in the underlying litigation is the full extent of the damages. In the latter situation, the cause of action accrues and the statute of limitations begins to run from the moment some damages are definitively incurred, regardless of the effect the underlying litigation may have on the extent of these damages.” (emphasis supplied)). This dissenting view was totally rejected there, but apparently has been revived by the majority today.
Here, the underlying litigation did not conclude until October 10, 2002, when the “sanctions” issue was finally determined and the entire matter was dismissed with prejudice. Similar to Fremont, even if TSE had incurred some indeterminate level of damages at an earlier point in the litigation, the true parameters of its damages were not, and could not be, fully realized and determined until the “sanctions” proceeding concluded the underlying litigation. Cf., e.g., Glucksman v. Persol N. Am., Inc., 813 So.2d 122, 124 (Fla. 4th DCA 2002) (“A legal malpractice cause of action accrues not necessarily when the client first suspects that the attorney might have committed malpractice, but rather, when the client incurs damages at the conclusion of the related or underlying judicial proceeding .... ” (emphasis supplied)); Hold v. Manzini, 736 So.2d 138, 142 (Fla. 3d DCA 1999) (“[M]ere knowledge of possible malpractice is not dispositive of when a malpractice action *56 accrues.”). The decision of the present majority to resurrect the approach abandoned in Fremont is an unwise departure from precedent, and it is my hope that this doctrinal misstep will be corrected in time.
The majority’s literalistic, mechanical reading of Silvestrone simply does not reflect the reality of when the “underlying litigation” at issue in this case concluded and, further, is totally out of step with our underlying logic and rationale in Peat, Marwick and related decisions. See, e.g., Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido, 790 So.2d 1051 (Fla.2001) (stating that Peat, Marwick and related decisions were intended, inter alia, to prevent clients from having to take directly contrary positions in two contemporaneous actions). Merely because the majority asserts in an unelaborated fashion that “[o]r-dinarily, there will not be a substantial gap in time between” resolution of the merits and the later resolution of an inextricably intertwined “sanctions” proceeding, does not make it so. See majority op. at 44. Instead, under the majority’s holding today, unless and until an inextricably intertwined “sanctions” proceeding is resolved and definitively concludes the underlying litigation, there remains an unremitting risk that the client will be forced to seek new counsel and to prematurely initiate malpractice litigation for fear of triggering the two-year statute of limitations under section 95.11(4)(a), Florida Statutes. Cf. Taracido v. Perez-Abreu, Zamora & De La Fe, P.A., 705 So.2d 41, 43 (Fla. 3d DCA 1997) (“The existence of legal malpractice is often difficult to ascertain. A client should not be placed in the position of having to file a potentially baseless claim prematurely fearing that otherwise an action will be precluded by the statute of limitations.”), approved, 790 So.2d 1051 (Fla.2001). As the Second District Court of Appeal correctly recognized below, this unnecessary risk triggers all of the undesirable, unreasonable attendant concerns that we identified in Peat, Marwick:
[Pjarties in such actions would be forced to argue inconsistent positions if they were required to file the malpractice action before resolution of attorneys’ fees in the underlying action. In the malpractice action in this case, TSE would have argued that they did not have a proper basis for filing the patent infringement action. In the ongoing patent infringement action, TSE would have argued that they did have a proper basis for the action.
In the same vein, forcing an aggrieved party to file a legal malpractice action before the underlying litigation is resolved would also create a conflict of interest that would undoubtedly require counsel to withdraw from representation in the underlying action. This would place the aggrieved party in the untenable position of having to hire new counsel who was unfamiliar with the case to continue the litigation or pursue negotiations at the last hour. This would also take away the opportunity for counsel to correct his or her mistakes in the underlying action.
TSE, 987 So.2d at 692 (emphasis supplied).
Fortunately, this undesirable outcome is efitirely avoidable by recognizing that Sil-vestrone simply did not involve, address, or contemplate litigation that continued past the time when a merits judgment became final, such as the present case in which an inextricably intertwined “sanctions” issue was later resolved to conclude the underlying litigation. Under circumstances such as these, the narrow articulation of the rule announced by the majority is inapposite, but the broader supporting rule continues unabated: In litigation that proceeds past the point contemplated in *57 Silvestrone, including cases that involve intertwined “sanctions” proceedings, “re-dressable harm cannot be determined until the conclusion of the [underlying] litigation.” Fremont, 796 So.2d at 506; see also Fremont Indem. Co. v. Carey, Divyer, Eckhart, Mason & Spring, P.A., 271 F.3d 1272, 1274 (11th Cir.2001) (“[T]he Supreme Court of Florida held that the statute of limitations began to run at the conclusion of the underlying litigation.” (emphasis supplied)). In my view, the only reasonable and logical analysis is that the underlying litigation continued here until October 10, 2002, and TSE filed its malpractice complaint against Larson in Florida circuit court on October 5, 2004, less than two years after Larson filed the stipulation to dismiss the federal patent-infringement action. Given the material facts, this is the only proper conclusion under Florida law.
In addition to the above-expressed concerns, the majority’s analysis and holding squarely conflict with, and contradict, the traditional rule against splitting causes of action:
We recognize the rule against the splitting of causes of action and that as a general rule the law mandatorily requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all. As is stated in 1 Am.Jur. 481, “the rule is founded upon the plainest and most substantial justice — namely, that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of suits.”
Gaynon v. Statum, 151 Fla. 793, 10 So.2d 432, 433 (1942) (emphasis supplied); see also Dep’t of Agric. & Consumer Servs. v. Mid-Fla. Growers, Inc., 570 So.2d 892, 901 (Fla.1990) (“The rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action.” (emphasis supplied)). This rule is founded on the following policy concerns:
(1) finality in court cases promotes stability in the law;
(2) multiple lawsuits arising out of a single incident are costly to litigants and an inefficient use of judicial resources; and
(3) multiple lawsuits cause substantial delay in the final resolution of disputes.
Mid-Fla. Growers, 570 So.2d at 901 (formatting altered).
In the present case, without relying upon any authority other than the incorrectly decided conflict case, the majority has concluded that two separate causes of action for litigation-related malpractice accrued (one associated with the merits judgment and another with the inextricably intertwined sanctions proceeding). See majority op. at 41-42. Again the majority fails to see the forest for the trees. There was a single ongoing episode that TSE alleges constituted malpractice. Specifically, TSE contends that Larson’s alleged malpractice consisted of improper, incorrect legal advice and shoddy (potentially unethical) legal representation with regard to the validity vel non of TSE’s mold-release patent. According to TSE and the record in this case, this single alleged episode led to both (a) the adverse merits judgment, and (b) the “sanctions” proceeding and associated attorneys’-fee award, each of which was a component of the same undifferentiated, inextricably intertwined underlying patent-infringement litigation, which was dismissed with prejudice on October 10, 2002.
Therefore, the majority has not at all identified separate malpractice actions that accrued at different points in time, but instead, has merely described the combined damages that flowed from an epi *58 sode of alleged malpractice, which accrued when the underlying litigation concluded. Where, as here, mutuality of parties and issues exists, the general rule applies, and a litigant may not split its cause of action to seek separate damages that arise from the same allegedly wrongful conduct. See, e.g., Mid-Fla. Growers, 570 So.2d at 901. To my knowledge this has always been the fundamental and elemental common-law rule in Florida, and Larson has not consented to separate actions arising from the same transaction or occurrence. The majority is simply incorrect as a matter of law that two separate causes of action for legal malpractice existed in this case.
For these reasons, I would approve the decision of the Second District below in TSE Industries, Inc. v. Larson & Larson, P.A., 987 So.2d 687 (Fla. 2d DCA 2008), and disapprove the sparsely reasoned conflict decision in Integrated Broadcast Services, Inc. v. Mitchel, 931 So.2d 1073 (Fla. 4th DCA 2006). The decision of the majority is neither compelled nor supported by Florida law. I respectfully dissent.
QUINCE, C.J., and PARIENTE, J, concur.

. See, e.g., Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla.1990) ("We find that the basic principles for all professional malpractice actions should be the same....”).

. TSE, 987 So.2d at 689.

. This statute provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." The statute applies in patent-infringement actions and is intended "to provide discretion where it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear.” J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1052 (Fed.Cir.1987) (emphasis omitted).

. The federal district court also entered a "sanctions” order on this same date. Thus, the parties were well aware that the entire litigation would not be resolved and concluded until the court determined with finality the character and amount of sanctions.