987 So.2d 687 (2008)
TSE INDUSTRIES, INC., Appellant,
v.
LARSON & LARSON, P.A.; Herbert W. Larson; and H. William Larson, Jr., Appellees.
No. 2D07-1872.
District Court of Appeal of Florida, Second District.
February 1, 2008.
Marie Tomassi, Stanley H. Eleff, and Edward B. Carlstedt of Trenan, Kemker, Scharf, Barkin, Frye, O'Neil & Mullis, P.A., St. Petersburg, for Appellant.
Brandon S. Vesely and Michael J. Keane of Keane, Reese, Vesely & Gerdes, P.A., St. Petersburg, for Appellees.
STRINGER, Judge.
TSE Industries, Inc. ("TSE"), seeks review of the trial court's order, which granted the motion for summary judgment filed by Larson & Larson, P.A., Herbert W. Larson, and H. William Larson, Jr. ("the Larson Defendants") and dismissed TSE's legal malpractice action as barred by the statute of limitations. We reverse because the trial court erred in determining the date the statute of limitations began to run.
TSE is a Florida corporation that custom manufactures a number of products including, but not limited to, rubber, plastics, and specialty chemicals. In 1992, *688 TSE hired William Stephens as vice president of its Specialty Chemicals Division. Immediately prior to his employment with TSE, Stephens worked with Dexter Corporation ("Dexter") as its vice president of Technology and Business Development for its Specialty Chemicals and Materials Group. Almost immediately after joining TSE, Stephens contended that he invented a new aqueous mold release compound and method of coating molds with this compound.
In 1992, Stephens, in his capacity as TSE's vice president, retained the Larson Defendants to serve as TSE's patent counsel and requested that Herbert Larson apply for a patent for Stephens' supposedly new compound. In 1993, the Patent Office issued a patent for Stephens' purported invention (the "TSE Patent"). Although Stephens was originally identified as the inventor and owner of the TSE Patent, Stephens assigned the TSE Patent to TSE.
In April 1994, at Stephens' direction, Herbert Larson wrote a letter to Dexter, alleging that Dexter's RC 321 Aqualine product infringed the TSE Patent. Dexter responded by alleging that Dexter's RC 321 Aqualine was unchanged from Dexter's R-100 Aqualine, which was first commercially sold more than one year before the filing date of the TSE Patent. Herbert Larson sent a copy of Dexter's response to Stephens, together with a cover letter that stated it would be prudent to have Dexter's R-100 Aqualine analyzed and determine when it was first sold. However, the samples were never tested, and neither Stephens nor the Larson Defendants undertook any further investigation with respect to the validity of the TSE Patent. The Larson Defendants had no further communications with Dexter regarding its alleged infringement of the TSE Patent.
In 1998, the Larson Defendants, as counsel for TSE, filed a complaint for patent infringement against Franklynn Industries, Inc. ("Franklynn"), in the United States District Court for the Middle District of Florida. During the course of discovery in the patent infringement action, Franklynn submitted an interrogatory to TSE requesting that TSE identify all other parties that TSE had accused of infringing the TSE Patent. In a sworn interrogatory response drafted by William Larson, Stephens denied that TSE had ever accused others of infringing the TSE Patent. Additionally, the Dexter correspondence was not produced in response to Franklynn's requests for production during the patent infringement action.
Franklynn independently learned of the correspondence between TSE and Dexter relating to the TSE Patent and accused TSE of "vexatious litigation and malicious prosecution for which Franklynn could recover its attorneys fees and seek sanctions from TSE and the Larson firm." Despite Franklynn's discovery of the Dexter communications, TSE did not resolve the case and proceeded to trial. Pursuant to a jury verdict, the federal court entered an order declaring the TSE Patent invalid. The clerk entered a judgment in the patent infringement action on October 24, 2001.
Franklynn filed a motion for the declaration of an exceptional case and for the recovery of attorneys' fees pursuant to 35 U.S.C. § 285,[1] and TSE filed a motion for judgment as a matter of law and for new trial. On August 16, 2002, the federal court entered an order granting Franklynn's *689 motion for attorneys' fees, in which the court found that Stephens' response to the Franklynn interrogatory was "blatantly inaccurate and . . . [was] intended to keep Franklynn from discovering a potential invalidity defense." The court further found that Stephens' failure to disclose the communications with Dexter "resulted in. . . a jury trial . . . that in all probability would have been avoided had the improper conduct not occurred." The court gave Franklynn additional time to submit evidence regarding the amount of fees and costs incurred.
On the same date, the federal court also entered an order that disposed of TSE's motion for judgment as a matter of law and for new trial. Although this order rendered the final judgment ripe for appeal, TSE did not seek further review of the final judgment. Thus, the final judgment in the patent infringement action became final on September 16, 2002, when the time for filing an appeal expired. See Wilson v. Clark, 414 So.2d 526, 530 (Fla. 1st DCA 1982).
TSE thereafter entered into negotiations with Franklynn to settle the issue of attorneys' fees and costs. The parties settled Franklynn's claim prior to the court entering a final judgment awarding attorney's fees. On October 10, 2002, the Larson Defendants and TSE filed a stipulation to dismiss the patent infringement action with prejudice.
On October 5, 2004, less than two years after the Larson Defendants filed the stipulation to dismiss the patent infringement action but more than two years after the underlying judgment became final, TSE filed suit against the Larson Defendants for legal malpractice. TSE asserted that the Larson Defendants committed malpractice by failing to properly advise them regarding the validity of the TSE Patent both before and after TSE filed the patent infringement action. TSE also asserted that the Larson Defendants committed malpractice by advising them to file the patent infringement action without investigating the validity of the TSE Patent or informing TSE that there were concerns regarding the validity of the TSE Patent. Finally, TSE asserted that the Larson Defendants committed malpractice by preparing a false interrogatory answer in the patent infringement action and failing to advise TSE regarding the issues about the validity of the TSE Patent after Franklynn independently discovered the Dexter communications. TSE asserted that it "was required to not only pay significant attorneys' fees and expenses to initiate and prosecute its unsuccessful Patent Infringement Action against Franklynn, but TSE was also required to pay significant attorney's fees and expenses to Franklynn."
The Larson Defendants filed an answer and affirmative defenses to TSE's complaint. Among their affirmative defenses, the Larson Defendants alleged that TSE's claims were barred by the two-year statute of limitations for professional malpractice. See § 95.11(4)(a), Fla. Stat. (2002). The Larson Defendants subsequently filed a motion for summary judgment based on this affirmative defense. At the hearing on the motion, TSE's counsel argued that the continuing representation doctrine applied so that on the undisputed facts, the statute of limitations was tolled as long as the Larson Defendants represented TSE in the patent infringement action. Following the hearing, the court granted the Larson Defendants' motion for summary judgment.
In granting summary judgment, the trial court relied on Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998), to hold that the statute of limitations began to run when the judgment on the merits of the patent infringement action became final. *690 The trial court held that the judgment became final when the federal court resolved the motions directed to the merits of the patent infringement action on August 16, 2002. Because the malpractice complaint was filed more than two years thereafter, the trial court held that it was barred by the statute of limitations.
On appeal, TSE argues that the trial court erred by relying on Silvestrone to determine when the statute of limitations began to run. TSE argues that, under the continuing representation doctrine, the statute of limitations was tolled as long as the Larson Defendants represented TSE in the patent infringement action. The Larson Defendants argue that TSE has not preserved the issue for appeal by pleading the continuing representation doctrine as an avoidance to their statute of limitations defense. The Larson Defendants alternatively argue that the continuing representation doctrine has not been adopted in Florida and should not be adopted because it is inconsistent with the supreme court's decision in Silvestrone.
Preliminarily, we disagree with the Larson Defendants that TSE has not preserved this issue for appeal. TSE did not seek to allege any new facts to avoid the facts alleged in the affirmative defense, but merely denied that its cause of action was barred by the statute of limitations. Thus, TSE was not required to plead an avoidance to the Larson Defendants' statute of limitations defense. See Buss Aluminum Prods., Inc. v. Crown Window Co., 651 So.2d 694, 695 (Fla. 2d DCA 1995); Kitchen v. Kitchen, 404 So.2d 203, 204 (Fla. 2d DCA 1981). Even if TSE were required to plead an avoidance, the issue was tried by implied consent. See Book v. City of Winter Park, 718 So.2d 945, 946 (Fla. 5th DCA 1998).
On the merits, this case is controlled by Silvestrone because it involves legal malpractice that arises out of the handling of litigation. See Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So.2d 504, 505-06 (Fla. 2001). In Silvestrone, the Florida Supreme Court resolved a conflict between the district courts regarding whether the statute of limitations for legal malpractice begins to run when the jury renders the verdict or when the court enters the final judgment. See Silvestrone v. Edell, 721 So.2d 1173, 1174 (Fla.1998). The court adopted a "bright-line rule" that the statute of limitations would begin to run when "the litigation is concluded by final judgment." Id. at 1175-76. The court explained that this happens when the final judgment becomes final after the time for filing an appeal expires or the appeals process is concluded. Id. at 1175 n. 2.
The court reasoned that liability for malpractice requires that the attorney be the proximate cause of the adverse outcome of the underlying litigation. Id. at 1175. The court explained that because "redressable harm is not established until final judgment is rendered, a malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client." Id. (citations omitted). Because posttrial motions could affect the plaintiff's rights or liabilities, the statute of limitations does not begin to run until those rights or liabilities are finally determined. Id. at 1175.
Applying Silvestrone to the facts of this case, we conclude that the trial court erred in determining that the statute of limitations began to run before the parties filed a stipulation to dismiss the underlying action with prejudice. The Silvestrone court's "bright-line rule" was that that the statute of limitations begins to run when "the litigation is concluded by final judgment." Under the particular facts in Silvestrone, the litigation was concluded when *691 the final judgment became final. In this case, however, the litigation was not concluded until the parties filed the stipulation to dismiss the underlying action with prejudice. When the final judgment in the patent infringement action became final for purposes of appeal, a second final judgment remained to be rendered in order to conclude the patent infringement action.
We recognize that this case presents a factual scenario not contemplated in Silvestrone. However, a narrow reading of Silvestrone would defeat the very policy concerns the supreme court sought to address in not only that case, but also in supreme court jurisprudence discussing professional malpractice in a nonlitigation setting. See, e.g., Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061 (Fla.2001); Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990). We look to the supreme court's decisions in these cases for guidance.
The issue in Peat, Marwick was "whether the commencement of the limitations period in an accounting malpractice action relating to income tax preparation occurs with the receipt of a `Ninety-Day letter' or with the conclusion of the appeals process, under circumstances where the accountant disagrees with the IRS's determination." 565 So.2d at 1325. The supreme court concluded that the statute of limitations began to run from the end of the appeals process because until then there would be no redressable harm or injury as required under section 95.11(4)(a). Id. at 1325-26. This is so because the appeals process could result in a determination that the IRS's initial determination was erroneous. Id. at 1326.
The Peat, Marwick court also explained that requiring the plaintiffs to file a malpractice action while the challenge to the IRS's deficiency notice in tax court was pending would require the plaintiffs to take contrary positions in the actions. Id. The plaintiffs would have to assert that the deduction the defendants advised them to take was proper in tax court, but they would have to argue that the deduction was unlawful in the malpractice action. The court concluded that forcing the parties "to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified." Id.
Blumberg involved a claim for malpractice against an insurance agent for his negligent failure to procure insurance coverage. 790 So.2d at 1063. The agent filed a motion for summary judgment, arguing that the statute of limitations had expired two years after the insurer denied coverage. The trial court agreed and granted the motion. The Fourth District affirmed the final summary judgment, holding that the statute of limitations began to run when the plaintiff filed his malpractice action against the insurer.
On appeal, the supreme court disagreed, holding that the statute of limitations begins to run "when the client incurs damages at the conclusion of the related or underlying judicial proceedings or, if there are no related or underlying judicial proceedings, when the client's right to sue in the related or underlying proceeding expires." Id. at 1065. The court explained that the case was not distinguishable from its earlier decision in Peat, Marwick. The court also explained that the logic behind the Peat, Marwick decision applied so "that a client should not be forced to bring a claim . . . prior to the time the client has incurred damages" because mandating "simultaneous suits would hinder the defense of the underlying claim and prematurely disrupt an otherwise harmonious business relationship." Id.
The policy concerns articulated by the supreme court in Peat, Marwick and *692 Blumberg are equally applicable to litigation malpractice actions in which a final judgment has become final for purposes of appeal but postjudgment motions for attorneys' fees are pending. In such actions, the client does not incur damages until the conclusion of the related judicial proceedings when the amount of attorneys' fees has been finally established. Until the case is fully resolved, there is a chance that the appeals process could result in a reversal of the original decision that established an injury.
Furthermore, parties in such actions would be forced to argue inconsistent positions if they were required to file the malpractice action before resolution of attorneys' fees in the underlying action. In the malpractice action in this case, TSE would have argued that they did not have a proper basis for filing the patent infringement action. In the ongoing patent infringement action, TSE would have argued that they did have a proper basis for the action.
In the same vein, forcing an aggrieved party to file a legal malpractice action before the underlying litigation is resolved would also create a conflict of interest that would undoubtedly require counsel to withdraw from representation in the underlying action. This would place the aggrieved party in the untenable position of having to hire new counsel who was unfamiliar with the case to continue the litigation or pursue negotiations at the last hour. This would also take away the opportunity for counsel to correct his or her mistakes in the underlying action.
Accordingly, we conclude that the statute of limitations did not begin to run in this case until October 10, 2002, the date on which the parties filed the stipulation to dismiss the underlying action with prejudice. Thus, the trial court erroneously interpreted Silvestrone to require a determination that the statute of limitations began to run when the judgment on the merits of the patent infringement action became final. Our conclusion that the trial court's interpretation of Silvestrone was flawed renders TSE's argument regarding the continuing representation doctrine moot.
We acknowledge that our decision today appears to conflict with the Fourth District's decision in Integrated Broadcast Services, Inc. v. Mitchel, 931 So.2d 1073 (Fla. 4th DCA 2006). In Mitchel, the defendant and his law firm represented the plaintiff in a federal lawsuit that resulted in an adverse judgment and money sanctions against the plaintiff. Id. at 1074. The plaintiff filed a legal malpractice action against the defendant more than two years after the underlying judgment became final but less than two years after the judgment awarding sanctions became final. The trial court granted summary judgment in favor of the defendant based on an expired statute of limitations.
The Fourth District held that there was a bifurcated statute of limitations for the two judgments. The court held that the statute of limitations for each judgment began to run from the date each judgment became final. The court acknowledged that the statute of limitations had expired for malpractice arising from the final judgment, but explained that "the damages caused by the sanctions did not exist at the time the judgment became final in the underlying litigation." Id. Thus, the court affirmed the summary judgment as it pertained to any claims other than those resulting from the sanctions.
Based upon our decision today, we certify conflict with Mitchel to the extent that it holds that the statute of limitations on the underlying judgment runs when the underlying judgment becomes final even when a motion for attorneys' fees or sanctions *693 remains pending. We hold that the statute of limitations in this case began to run on October 10, 2002, the date on which the parties filed the stipulation to dismiss the patent infringement action with prejudice. Accordingly, we reverse the trial court's order granting the Larson Defendants' motion for summary judgment and remand for further proceedings on TSE's legal malpractice action.
Reversed and remanded.
WHATLEY, J., Concurs.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I concur in this decision, including the certification of conflict to the supreme court. At the same time, I must admit that the holding in Mitchel, 931 So.2d 1073, is not illogical. I realize that the supreme court tried to create a "bright-line rule" in Silvestrone, but I doubt that such a rule is possible so long as the legislature mandates a discovery statute of limitations for professional malpractice. See § 95.11(4)(a).
Generally, a discovery statute of limitations provides a longer period in which to begin a lawsuit than a statute of limitations based on the date the cause of action accrued. A plaintiff cannot "discover" a claim until it has accrued even if the plaintiff is well aware of an act of malpractice that may eventually cause the legal damage that is essential for the claim to accrue.
Damage is an essential element of a claim for professional malpractice, and it is frequently difficult to determine when damage occurs in a claim of legal malpractice. I am inclined to believe that the Silvestrone decision was not creating a bright-line rule to determine when the plaintiff discovered the claim of malpractice. Instead, I think the supreme court was explaining that the claim had not accrued because legal damage had not occurred until entry of the final judgment. In Silvestrone, the damage and notice occurred essentially at the same time.
In this case, assuming there was an act of malpractice, it would seem that a claim of professional malpractice accrued prior to October 2002 because a final judgment that was subject to execution against the client existed prior to that time. It would appear that the plaintiff in this case had discovered the act of alleged malpractice more than two years prior to the filing of this lawsuit.
The Fourth District in Mitchel resolved a similar issue by creating two or more separate claims of malpractice and permitting only the most recent claim to proceed. I am not certain that I fully understand all of the ramifications that could arise if we divided litigation-based malpractice into separate parcels with varying accrual dates. I am inclined to believe that this approach could create other problems.
Our holding today probably is a modified version of the continuing representation doctrine. We are not holding that the statute of limitations commences when the representation ceases. We are essentially holding that a claim of litigation-based malpractice is a continuing tort that ceases, and thereby accrues, with the final stipulation of dismissal in the lawsuit in which the malpractice occurs. Cf. Halkey-Roberts Corp. v. Mackal, 641 So.2d 445, 447 (Fla. 2d DCA 1994) (explaining that statute of limitations begins to run in a case involving a continuing tort from the date the tortious conduct ceases). Clearly both the accrual of the claim, based on the first dollar of damage, and the discovery of the claim could occur prior to that time. On the other hand, the damages in a litigation-based *694 malpractice claim are usually a monetary amount that progressively increases while the litigation continues. For purposes of the statute of limitations, it is not unreasonable to hold that accrual of the action occurs on a continuing basis that ends either when the lawyer is fired or the lawsuit reaches the point of final dismissal.
NOTES
[1] This provision provides for the award of attorney's fees to the prevailing party "in exceptional cases." 35 U.S.C. § 285.