22 So.3d 36 (2009)
LARSON & LARSON, P.A., et al., Petitioners,
v.
TSE INDUSTRIES, INC., Respondent.
No. SC08-428.
Supreme Court of Florida.
November 5, 2009.
*37 Brandon S. Vesely and Michael J. Keane of Keane, Reese, Vesely, and Gerdes, P.A., St. Petersburg, FL, for Petitioners.
Marie Tomassi, Stanley H. Eleff, and Edward B. Carlstedt of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill, and Mullis, P.A., St. Petersburg, FL, for Respondent.
CANADY, J.
We have for review the decision of the Second District Court of Appeal in TSE Industries, Inc. v. Larson & Larson, P.A., 987 So.2d 687 (Fla. 2d DCA 2008), in which *38 the district court certified direct conflict with the decision of the Fourth District Court of Appeal in Integrated Broadcast Services, Inc. v. Mitchel, 931 So.2d 1073 (Fla. 4th DCA 2006), regarding when the two-year statute of limitations begins to run on a legal malpractice claim. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
The Second District held in Larson that where the judgment underlying a litigation-related legal malpractice claim is final, the statute of limitations does not begin to run until the final disposition of motions for sanctions. On similar facts, however, the Fourth District in Mitchel held that the limitations period on a legal malpractice claim began to run on the underlying judgment when that judgment was final but did not begin to run with respect to a subsequent sanctions judgment until the sanctions judgment became final. As we explain below, we agree with the Fourth District's decision in Mitchel.

I. BACKGROUND
In 1998, Larson & Larson, P.A., as counsel for TSE Industries, filed a patent infringement suit in United States district court to enforce one of TSE's patents against Franklynn Industries, Inc. After trial, the jury returned a verdict in favor of Franklynn, finding that TSE's patent was invalid. The trial court entered judgment against TSE in the case on October 24, 2001. TSE filed timely motions for judgment as a matter of law and for new trial, and Franklynn filed a post-judgment motion for declaration of an exceptional case and for recovery of attorney fees. See 35 U.S.C. § 285 (2006) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party [in patent infringement actions].")
On August 16, 2002, the federal district court entered two orders. One order disposed of TSE's motions and affirmed the jury verdict, thus entering judgment against TSE.[1] TSE did not appeal this order, and the judgment was final thirty days later, September 16, 2002. In the other order of August 16, 2002, the federal judge granted Franklynn's sanctions motion. The court found the case exceptional within the meaning of the statute, relying largely on its findings that a TSE employee engaged in inequitable conduct both before the Patent and Trademark Office and before the court and that TSE was aware of a possible problem with the patent and did not candidly disclose this fact. The federal court determined that but for such conduct, the trial would not have been necessary and awarded Franklynn prevailing party attorney fees and expert witness fees. Leaving the amount of the sanctions award for later determination, the trial court ordered Franklynn to file a revised statement of fees and costs. The parties, however, settled the issue before the court issued a final determination, and on October 10, 2002, the parties filed a stipulation of dismissal.
On October 5, 2004more than two years after the judgment in the patent case was final but less than two years after the parties filed the stipulation of dismissalTSE filed a legal malpractice suit against Larson in Florida circuit court. TSE alleged negligence and breach of contract and sought monetary damages for the attorney fees and expenses incurred by TSE to initiate and prosecute the patent infringement suit and for the sums it paid *39 for Franklynn's attorney fees and expenses.[2]
Larson moved for summary judgment based on the two-year statute of limitations for professional malpractice in section 95.11(4)(a), Florida Statutes (2002). After hearing argument, the trial court entered final summary judgment for Larson. Applying this Court's decision in Silvestrone v. Edell, 721 So.2d 1173 (Fla. 1998), the trial court held the action was barred. The court reasoned that judicial labor regarding the merits of the underlying action ended when the judgment was not appealed. Further, the court concluded that the order granting attorney fees could not alter that final judgment and TSE's complaint did not allege any legal malpractice occurring after the August 2002 orders were entered.
As explained more fully in the next section, the Second District reversed, concluding that this Court's Silvestrone opinion did not contemplate the factual scenario in this case. Larson, 987 So.2d at 691. Accordingly, the district court held that the statute of limitations did not begin to run until the parties settled the sanctions claim and filed the stipulation dismissing the case with prejudice.

II. SILVESTRONE AND THE CONFLICT IN THE CASES
Florida law provides that "[a] cause of action accrues when the last element constituting the cause of action occurs," § 95.031(1), Fla. Stat. (2002), and that a legal malpractice action must be brought within two years "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence," § 95.11(4)(a), Fla. Stat. (2002). "A legal malpractice action has three elements: 1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp., 969 So.2d 962, 966 (Fla.2007) (quoting Sec. Nat'l Servicing Corp. v. Law Office of David J. Stern, P.A., 916 So.2d 934, 936-37 (Fla. 4th DCA 2005)).
In Silvestrone, we specifically addressed the question of when the statute of limitations begins to run in a litigation-related legal malpractice claim. The district courts in both Larson and Mitchel expressly relied on Silvestrone. Accordingly, to provide context for these decisions and the conflict presented here, we begin by reviewing Silvestrone.
Silvestrone, the plaintiff in a federal antitrust action, prevailed when the jury returned a verdict in his favor and awarded him money damages. Silvestrone, 721 So.2d at 1174. The court entered final judgment two years later, when it resolved various post-trial motions, including Silvestrone's motion for attorney fees and costs and a coplaintiff's motion for new trial. The final judgment became final on February 4, 1992, when it was not appealed. Almost a year later, Silvestrone filed a legal malpractice action against his former trial attorney "for exceeding his authority *40 to enter into a settlement agreement." Id. His former attorney raised the statute of limitations as a bar to the suit, arguing that the statute began to run when the jury returned its verdict. Although the district court agreed, we unanimously quashed its decision. Id.
Beginning from the premise that the law was unclear regarding when the statute of limitations period begins to run for a litigation-related legal malpractice claim, we sought to establish a clearly delineated rule. Id. at 1175. We recognized in this context that until final judgment is entered, a trial court may revisit any nonfinal ruling. Accordingly we reasoned and held as follows:
[W]hen a malpractice action is predicated on errors or omissions committed in the course of litigation, and that litigation proceeds to judgment, the statute of limitations does not commence to run until the litigation is concluded by final judgment. To be specific, we hold that the statute of limitations does not commence to run until the final judgment becomes final.
To be liable for malpractice arising out of litigation, the attorney must be the proximate cause of the adverse outcome of the underlying action which results in damage to the client. Since redressable harm is not established until final judgment is rendered, a malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client.
....
We therefore hold, in those cases that proceed to final judgment, the two-year statute of limitations for litigation-related malpractice under section 95.11(4)(a), Florida Statutes (1997), begins to run when final judgment becomes final. This bright-line rule will provide certainty and reduce litigation over when the statute starts to run. Without such a rule, the courts would be required to make a factual determination on a case by case basis as to when all the information necessary to establish the enforceable right was discovered or should have been discovered.
Id. at 1175-76 (emphasis added) (citations and footnote omitted). For Silvestrone, this meant that his malpractice claim was timely because the two-year statute did not begin to run until the "final judgment became final," id. at 1175, some two years after the jury verdict was entered, see id. at 1174.
In the present case, the Second District addressed a somewhat different factual scenario. Unlike Silvestronewhere the damages based on the jury's verdict and the award of attorney fees were included in the same final judgmentin this case, when the final judgment against TSE Industries in the federal action was final, the sanctions order against TSE was not. The district court applied our Silvestrone decision as follows:
The Silvestrone court's "bright-line rule" was that that the statute of limitations begins to run when "the litigation is concluded by final judgment." Under the particular facts in Silvestrone, the litigation was concluded when the final judgment became final. In this case, however, the litigation was not concluded until the parties filed the stipulation to dismiss the underlying action with prejudice. When the final judgment in the patent infringement action became final for purposes of appeal, a second final judgment remained to be rendered in order to conclude the patent infringement action.

Larson, 987 So.2d at 690-91 (emphasis added). The Second District thus reasoned that until the order imposing sanctions *41 was final, the legal malpractice cause of action did not accrue.
The operative facts of Mitchel, the conflict case, are similar. Mitchel represented Integrated Broadcast Services, the plaintiff in a federal lawsuit. The final summary judgment in favor of the defendants was affirmed on appeal, but while the appeal was pending, the defendants moved for sanctionson grounds that Mitchel does not identifyagainst Integrated and its attorney, Mitchel.[3] Two months after the final judgment was final, the trial court awarded the defendants sanctions, and Integrated appealed. The parties subsequently settled and filed a dismissal of the sanctions appeal in January 2003. Integrated filed its legal malpractice action against Mitchel more than two years after the final summary judgment was final on appeal but within two years of the sanctions judgment becoming final. Mitchel, 931 So.2d at 1074. Integrated's malpractice complaint alleged that counsel's negligence caused the adverse judgment in the underlying action and the subsequent sanctions award. The trial court held that the statute of limitations barred the suit.
The district court in Mitchel held that the statute of limitations barred the malpractice claim as to the underlying action but determined that the malpractice claim regarding the sanctions judgment was not barred. Id. The Fourth District cited Silvestrone and reasoned that "[b]ecause the damages caused by the sanctions did not exist at the time the judgment became final in the underlying litigation, the trial court erred in concluding that the cause of action for legal malpractice for the sanctions accrued before the judgment for sanctions became final." Mitchel, 931 So.2d at 1074.
In Larson, the Second District certified conflict with Mitchel "to the extent that it holds that the statute of limitations on the underlying judgment runs when the underlying judgment becomes final even when a motion for attorneys' fees or sanctions remains pending." Larson, 987 So.2d at 692-93.

III. ANALYSIS
Both Larson and TSE contend that there is only one accrual date for the malpractice claims brought by TSE against Larson, but they disagree about what that date is. Larson now argues, as it did below, that the cause of action accrued when the judgment entered in the underlying action became final. TSE contends that the cause of action accrued when TSE and Franklynn filed a dismissal after entering into a settlement agreement with respect to the claim for attorney fees. Below, we address these arguments and explain why we adopt the reasoning of Mitchel, which identifies two different accrual datesone for the claims based on the underlying litigation and one for the claims based on the post-trial sanctions.
The statute of limitations requires that a legal malpractice action on a litigation-related claim be brought within two years after the cause of action is or should have been discovered, § 95.11(4)(a), Fla. Stat. (2002), and in Silvestrone we drew the line of accrual at the time final judgment was final to "provide certainty and reduce litigation over when the statute starts to run." Silvestrone, 721 So.2d at 1176.[4] *42 Until a final judgment is final, the outcome of the case and the occurrence of harm to the client remains uncertain, and it cannot be said that the cause of action was discovered or should have been discovered. See id. at 1175. Before that point is reached, the "malpractice claim is hypothetical and damages are speculative." Id. But once a judgment adverse to the client has reached the point of finality, "the last element constituting the [malpractice] cause of action occurs," § 95.031(1), Fla. Stat. (2002) that is, the element of "loss to the client," Law Office of David J. Stern, P.A., 969 So.2d at 966and the cause of action is or should be "discovered," § 95.11(4)(a), Fla. Stat. (2002).
The crux of Silvestrone's reasoning is that it cannot be known with sufficient certainty that the client has suffered any loss caused by the lawyer's negligence until the finality of a judgment adverse to the client. A favorable result for the client in the lawsuitwhich could be the result of appellate proceedingswould, of course, mean that the client had suffered no loss. Silvestrone's rule thus merely establishes a bright line for establishing when the client has suffered some loss as a consequence of the attorney's negligence. It does not require that there be a determination of the full extent of all losses suffered by the client due to the lawyer's negligence.
This is in line with the long-standing rule generally applicable to personal injury claims under which "the cause of action accrues and the statute begins to run from the time when the injury was first inflicted, and not from the time when the full extent of the damages sustained have been ascertained." Seaboard Air Line R.R. Co. v. Ford, 92 So.2d 160, 164 (Fla.1956) (on rehearing); see also Highland Indus. Park, Inc. v. BEI Defense Sys. Co., 357 F.3d 794, 797 (8th Cir.2004) ("[W]e know of no state whatever in which an injured party must know the full extent of the damages that it may recover before the statute of limitations begins to run on its claim. Indeed, the cases on this issue are legion."); Goodhand v. United States, 40 F.3d 209, 212 (7th Cir.1994) (stating that it "is a general principle of limitations law" that "[t]he statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later").
We reaffirmed Silvestrone's bright-line rule in Fremont Indemnity Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So.2d 504 (Fla.2001), a case involving a legal malpractice claim arising from a lawyer's failure to inform the clientthe defendant in an architectural malpractice actionof settlement offers. We concluded that the case presented "a classic example of why redressable harm cannot be determined until the conclusion of the litigation." Id. at 506. We specifically relied on the Silvestrone rule that the limitations period for a litigation-related legal malpractice claim does not commence "until the final judgment becomes final" with a result adverse to the client. We reasoned that until the judgment adverse to the client reached the point of finality, the "possibility existed that [the client] would not suffer any redressable harm" as a consequence of the lawyer's negligence. As in Silvestrone, our analysis in Fremont turned on the need for sufficient certainty that the client had sustained some loss. Fremont does not hold that the full extent of a client's loss must be established in *43 order for the limitations period to commence.
TSE argues for our approval of the Second District's alteration of the Silvestrone rule in the decision under review. The Second District determined that the Silvestrone rule of finality applied in this case only when the sanctions claim was resolved by the stipulation of dismissal. According to the Second District, it was only at that point that all matters related to the underlying litigation were concluded and the limitations clock started ticking. Larson, 987 So.2d at 692. "Until the case is fully resolved," the court reasoned, "there is a chance that the appeals process could result in a reversal of the original decision that established an injury." Id. (emphasis added). The Second District's reasoning on this point, however, is not correct.
Under the Silvestrone bright-line rule, redressable harm was established when the final judgment against TSE in the patent infringement action became final in September 2002. At that point, "the information necessary to establish the enforceable right [of TSE against Larson for malpractice] was discovered or should have been discovered." Silvestrone, 721 So.2d at 1176. The dismissal filed after the sanctions claim was settled had no effect on the finality of the final judgment in the underlying action. Even if the federal court had issued a final judgment on sanctions and it was reversed on appeal, the finality of the judgment in the patent case and the attendant establishment of damages would have been unaffected. The Second District's statement to the contrary is plainly erroneous.
Under the Second District's approach, the determination of redressable harm, which was essential to our Silvestrone holding, is effectively removed from the analysis and the accrual of the cause of action occurs only when there is no further ongoing litigation related to the underlying action. This is inconsistent with the provision in section 95.11(4)(a) that "the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." When the underlying action was finally determined adversely to TSE, TSE had knowledge of the harm it suffered as a result and the malpractice cause of action accrued with respect to the damages entailed by that adverse determination. There is no basis for concluding that TSE's cause of action for these damages was not discovered or discoverable at that point.[5]
In concluding that no cause of action accrued in this case until the settlement of the sanctions claim, the Second District expressed concern that otherwise parties "would be forced to argue inconsistent positions if they were required to file the malpractice action before resolution of attorneys' fees in the underlying action." Larson, 987 So.2d at 692. The Second District based its decision in part on what it characterized as "[t]he policy concerns articulated" in Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1324 (Fla. 1990). Larson, 987 So.2d at 692. We conclude, however, that the Second District's *44 reliance on Peat, Marwick is unwarranted.
In Peat, Marwick we addressed the question of when the limitations period began for an accounting malpractice action related to tax advice and the preparation of a tax returnwith receipt of a notice of tax deficiency or when the tax court action was final. In rejecting the date of the receipt of the deficiency notice as the date of accrual, we referred to the decisions of the district courts concerning "attorney malpractice actions," which had "expressly held that a cause of action for legal malpractice does not accrue until the underlying legal proceeding has been completed on appellate review because, until that time, one cannot determine if there was any actionable error by the attorney." Peat, Marwick, 565 So.2d at 1325. Our conclusion that "the limitations period for accounting malpractice commenced when the United States Tax Court entered its judgment" flowed from the same reasoning. Id. at 1327. We thus "reject[ed] Peat Marwick's contention that an IRS deficiency determination conclusively establishes an injury upon which to base a professional malpractice action." Id. at 1326.
In Peat, Marwick we also observed that accepting Peat, Marwick's argument would mean that the clients "would have had to have filed their accounting malpractice action during the same time that they were challenging the IRS's deficiency notice in their tax court appeal." Id. at 1326. We concluded that "[s]uch a course would have placed them in the wholly untenable position of having to take directly contrary positions in these two actions." Id. That is, in the tax court the clients would be arguing that the return prepared by the accountant was proper, while in the malpractice action the client would be arguing that the return was prepared negligently.
The rule we rely on here does not set up the same prospect regarding the assertion of inconsistent positions as did the rule urged by Peat, Marwick. Ordinarily, there will not be a substantial gap in time between ultimate resolution of the litigation regarding the underlying judgment and the resolution of the litigation regarding sanctions. In any event, Peat, Marwick does not articulate a rule that the running of the statute of limitations for professional malpractice is held in abeyance until the conclusion of any collateral litigation in which the client might assert a position inconsistent with the malpractice claim. Such a rule could not be reconciled with the commencement point"the time the cause of action is discovered or should have been discovered"established in section 95.11(4)(a). In Peat, Marwick, 565 So.2d at 1325, we acknowledged that a legal malpractice cause of action accrues as soon as the client can "determine if there was any actionable error by the attorney"that is, when "the underlying legal proceeding has been completed on appellate review" and the client can know of damages arising from the final judgment suffered as a consequence of the attorney's malpractice.
TSE also argues that the Second District's conclusion that none of TSE's claims were barred is justified by the application of the continuing or continuous representation doctrine, "a doctrine of law which tolls the legal negligence statute of limitations so long as the attorney continues to represent the client in the matter." Alagia, Day, Trautwein & Smith v. Broadbent, 882 S.W.2d 121, 122 (Ky.1994). Although the Second District concluded that its interpretation of Silvestrone "render[ed] TSE's argument regarding the continuing representation doctrine moot," the result reached by the Second District is certainly consistent with that doctrine. *45 Larson, 987 So.2d at 692; see also id. at 693 (Altenbernd, J., concurring) ("Our holding today probably is a modified version of the continuing representation doctrine.").
We have not previously adopted the continuing representation doctrine in legal malpractice actions, see Perez-Abreu, 790 So.2d at 1056 (Pariente, J., concurring in result only) (discussing rationale for the continuous representation rule), and for the reasons presented below, we conclude that the doctrine is inconsistent with the pertinent statutory provisions.
The continuous representation doctrine is predicated on the view that because of "the attorney's superior knowledge of the law and the dependence of the client," "there can be no effective discovery of the [the attorney's] negligence so long as the relationship prevails." Alagia, 882 S.W.2d at 125. Under this view, although the attorney's negligence and the resulting harm may be manifest, the nature of the ongoing attorney-client relationship requires that the running of the statute of limitations be tolled until that relationship is terminated with respect to the matter at issue. Certain "practical advantages" are cited in support of the doctrine. Id. TSE argues in accordance with the Kentucky court's reasoning in Alagia that the doctrine allows "a negligent attorney . . . to correct or mitigate the harm if there is time and opportunity and if the parties choose such a course." Id. Further, it is urged that without the doctrine, "the client may be forced, on pain of having his malpractice claim become time-barred, to automatically accept the advice of a subsequent attorney." Id.
As a practical matter, by holding that redressable harm is not established for purposes of a legal malpractice claim "until the final judgment becomes final," Silvestrone, 721 So.2d at 1175, we substantially addressed the basic concern regarding undue disruption of the attorney-client relationship underlying the continuing representation doctrine. Because finality requires the conclusion of appellate review, if any, there is no requirement that an ongoing attorney-client relationship be disrupted until two years after the appellate process has run its course. In the usual case, collateral matters will be resolved by then. However, even if they are not, once a judgment adverse to the client has reached the point of finality, there is no justification for tolling the statute of limitations.
In Kelley v. School Board of Seminole County, 435 So.2d 804 (Fla.1983), which we decided long before Silvestrone, we rejected the continuing representation doctrine in an architectural malpractice action. We disapproved the district court majority's conclusion that "the `continuous treatment' doctrine [is] embodied in Florida's statute of limitations when a client-professional relationship is involved." Kelley, 435 So.2d at 805 (footnote omitted); see Almand Constr. Co. v. Evans, 547 So.2d 626, 628 (Fla. 1989) (noting that in Kelley the Court "rejected the `continuous treatment' doctrine"). And we stated that the dissenting opinion of "Judge Cowart reached the proper conclusion." Kelley, 435 So.2d at 805. Judge Cowart squarely rejected the notion that an ongoing client-professional relationship justifies tolling the statute of limitations:
Existing law does not require a client to sue his professional "immediately" after discovering negligently caused injury or damage. Applicable statutes of limitation give either two or . . . four years within which time the client should either give up on his amiable but bungling professional, get competent help and sue, or be forever barred from asserting his stale claim.
*46 Sch. Bd. of Seminole County v. GAF Corp., 413 So.2d 1208, 1213 (Fla. 5th DCA 1982) (Cowart, J., dissenting), quashed sub nom. Kelley v. Sch. Bd. of Seminole County, 435 So.2d 804 (Fla.1983); see Kelley, 435 So.2d at 805 (citing this text with approval).
TSE's argument that we should employ the continuous representation doctrine to toll the statute of limitations founders not only on our decision in Kelley but also on the text of section 95.051, Florida Statutes (2002), which restricts the circumstances under which statutes of limitations may be tolled. Section 95.051(1) contains a list of specific circumstances in which the running of the time under statutes of limitations (subject to the exception of certain statutes) is tolled. The existence of an ongoing attorney-client relationship is not on that list. (Nor is the existence of any other ongoing professional-client relationship.) Section 95.051(2) provides that "[n]o disability or other reason shall toll the running of any statute of limitations" except as specifically authorized by statute. See Hearndon v. Graham, 767 So.2d 1179, 1185 (Fla.2000) ("[T]he tolling statute specifically precludes application of any tolling provision not specifically provided therein."). Accordingly, in the absence of a specific statutory authorization for doing so, we are precluded from tolling the statute of limitations based on the continuous representation doctrine.
In sum, the position urged by TSE and the analysis employed by the Second District are wholly detached from the governing statute, which ties the running of the limitations period for lawyer malpractice claims to "the time the cause of action is discovered or should have been discovered." § 95.11(4)(a).[6] The policy considerations advanced by TSE and the Second Districtwhatever their merits may be cannot be allowed to defeat the policy choice which is embodied in the statutory text enacted by the Legislature.
Under the Second District's reasoning, if collateral post-trial issues remain pending, a cause of action for malpractice does not accrue even when after the conclusion of any appellate review, the client is subject to an enforceable final judgment which resulted from a lawyer's malpractice. It requires a willing suspension of disbelief to conclude that there is no "redressable harm" in such circumstances. At the point a judgment adverse to the client becomes irreversibly final, it can no longer be said that the "malpractice claim is hypothetical and damages are speculative." Silvestrone, 721 So.2d at 1175. It cannot plausibly be argued that a client who is subject to such an enforceable judgment and thus faces the immediate prospect of execution of the judgment has not "discovered" the harm caused by the lawyer's negligence. The conclusion that the statute of limitations does not begin to run in such circumstances has not the slightest connection with the discovery rule laid down in the statute. And it is inconsistent with the reasoning of Silvestrone, which is predicated on the discovery rule.
Finally, we turn to Larson's argument that TSE's sanctions-based claim is barred because it accrued when the underlying judgment became final. We conclude that this argument is no more consistent with the statute of limitations and Silvestrone than is the view adopted by the Second District.
In Mitchel, the Fourth District determined that two statute of limitations periods *47 applied; thus there were two legal malpractice claims. Mitchel, 931 So.2d at 1074; see Larson, 987 So.2d at 692 (referring to the Fourth District's finding of a "bifurcated statute of limitations for the two judgments"). Although the client's legal malpractice claim regarding the adverse judgment was barred by the statute of limitations, the claim that Mitchel negligently caused the judgment for sanctions was not. The district court explained as follows:
In order to be liable for malpractice resulting from litigation, the lawyer "must be the proximate cause of the adverse outcome of the underlying action which results in damage to the client." Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998). Because the damages caused by the sanctions did not exist at the time the judgment became final in the underlying litigation, the trial court erred in concluding that the cause of action for legal malpractice for the sanctions accrued before the judgment for sanctions became final.

. . . .
The summary judgment is affirmed as it relates to plaintiff's claims other than the damages resulting from the sanctions, but is reversed in order for plaintiff to file an amended complaint limited to damages caused by the sanctions.
Mitchel, 931 So.2d at 1074 (emphasis added).
Sanctions such as attorney fees are collateral to the underlying judgment and do not prevent judgment in the underlying action from becoming final. However, being "collateral" does not mean they are subsumed by the underlying judgment. A judgment imposing such sanctions is appealable independently of the final judgment in the underlying action. See Janelli v. Pagano, 492 So.2d 796, 796-97 (Fla. 2d DCA 1986) ("A subsequent attorney's fee order judgment is a final order appealable as such apart from the final judgment."); see also Oregon Natural Desert Ass'n v. Locke, 572 F.3d 610, 614 (9th Cir.2009) ("An award of attorney fees raises legal issues collateral to and separately appealable from the decision on the merits." (citing Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988))). Thus, as the Fourth District concluded, the finality of a determination regarding a claim for sanctions may occur independently of the finality of the underlying judgment. And a determination adverse to the client in the sanctions litigation does not ineluctably flow from an adverse determination in the underlying litigation.
The damage suffered by the client arising from the underlying judgment is discrete from any damage that might be suffered by the client arising from a sanctions claim that is not finally adjudicated in the underlying judgment. The discrete occurrence of damagemarked by a separate final judgment or the equivalent gives rise to the discrete discovery of loss and the discrete accrual of separate causes of action for malpractice.[7] Here, the point *48 of finality with respect to the sanctions claim was not reached until the settlement was entered while the sanctions litigation was pending. Until then, it was possible that an appeal in the sanctions litigation would produce an outcome favorable to TSE. Only with the entry of the settlement agreement was the existence of any harm to TSE arising from the sanctions claim determined with sufficient certainty to justify commencement of the limitations period.
Accordingly, we conclude that the Fourth District's bifurcated approach is most consistent with section 95.11(4)(a) and our reasoning in Silvestrone. Given that the underlying litigation between TSE and Franklynn was concluded before the sanctions litigation was resolved, redressable harm was established regarding the underlying litigation before there was redressable harm with respect to the sanctions. The sanctions-based malpractice claim was "hypothetical and [the related] damages [were] speculative until . . . an adverse outcome to the client" occurred in the litigation concerning the sanctions. Silvestrone, 721 So.2d at 1175.

IV. CONCLUSION
Under our decision, TSE's malpractice claim regarding the final judgment in the underlying patent action is barred, but the malpractice action regarding the sanctions claim is not barred. Accordingly, we quash that portion of the Second District's decision that reversed the summary judgment as to the malpractice claim regarding the underlying patent infringement action, and we approve the Second District's reversal of the summary judgment as to the malpractice claim regarding sanctions.[8]
It is so ordered.
POLSTON and LABARGA, JJ., concur.
PERRY, J., concurs in part and dissents in part with an opinion.
LEWIS, J., dissents with an opinion, in which QUINCE, C.J., and PARIENTE, J., concur.
PERRY, J., concurring in part and dissenting in part.
I agree with the present majority opinion to the extent it holds that the portion of TSE's malpractice claim involving TSE's attorney fees and expenses is barred, but I disagree to the extent it holds that the portion involving Franklynn's fees and expenses is not barred. I would remand for reinstatement of the trial court's order of summary judgment barring TSE's malpractice claim in its entirety.

A. The Malpractice Claim
The trial court entered judgment for Franklynn in the patent case on October 24, 2001. TSE filed timely motions for judgment as a matter of law and for a new trial, and Franklynn filed a motion for attorney fees and expenses as the prevailing party under the applicable statute. See 35 U.S.C. § 285 (2006) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party [in patent infringement cases]."). On August 16, 2002, the court entered two orders. One order disposed of TSE's motions, denying all but one of TSE's claims. TSE *49 did not appeal this order, and the judgment became final for purposes of appeal thirty days later, on September 16, 2002. The other order awarded attorney fees and expenses to Franklynn, and directed Franklynn to file a revised statement of fees and expenses so the amount could be calculated. The court reasoned that Franklynn, as the prevailing party, was entitled to attorney fees and expenses because TSE's vice president had engaged in deceptive conduct both prior to and during trial, and that absent this conduct a costly jury trial probably would have been avoided.
The parties on October 10, 2002, entered into a confidential settlement agreement and filed a joint stipulation of dismissal with prejudice as to the underlying patent case, and although this stipulation had no effect on the patent decision, which was final at that point, the private agreement fixed the amount of Franklynn's fees and expenses. On October 5, 2004, TSE filed a malpractice claim against Larson seeking (a) reimbursement for its own attorney fees and expenses in the patent case, and (b) reimbursement for Franklynn's attorney fees and expenses in the same case, for which TSE was liable. Larson moved for summary judgment based on the two-year statute of limitations, and the court granted the motion, ruling that the statute of limitations began to run on September 16, 2002, when TSE's post-trial motions were resolved and no appeal was taken. The district court reversed, holding that the statute of limitations did not begin to run until entry of the parties' joint stipulation on October 10, 2002.

B. The Applicable Law
Statute of limitations issues in litigation-related legal malpractice claims in Florida are governed by two main authorities. First, section 95.11, Florida Statutes (2002), sets forth a two-year limitations period for the filing of such claims. See § 95.11(4)(a), Fla. Stat. (2002). The commencement of this period, however, is contingent on the discovery of the claim:
Actions other than for recovery of real property shall be commenced as follows:
. . . .
(4) Within two years.
(a) An action for professional malpractice, other than medical malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence. However, the limitation of actions herein for professional malpractice shall be limited to persons in privity with the professional.
§ 95.11, Fla. Stat. (2002) (emphasis added).
And second, the Court in Silvestrone v. Edell, 721 So.2d 1173 (Fla.1998), addressed the above discovery requirement and established a bright-line rule:
We therefore hold, in those cases that proceed to final judgment, the two-year statute of limitations for litigation-related malpractice . . . begins to run when final judgment becomes final. This bright-line rule will provide certainty and reduce litigation over when the statute starts to run. Without such a rule, the courts would be required to make a factual determination on a case by case basis as to when all the information necessary to establish the enforceable right was discovered or should have been discovered.
Silvestrone, 721 So.2d at 1175-76. The Court was clear in its meaning of the term "final":
[A] judgment becomes final either upon the expiration of the time for filing an appeal or postjudgment motions, or, if an appeal is taken, upon the appeal being *50 affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing.
Id. at 1175 n. 2.

C. The Present Case
Applying the above law to the present case, I would remand for reinstatement of the trial court's order of summary judgment. Under the bright-line rule of Silvestrone, the statute of limitations for TSE's malpractice claim began to run on September 16, 2002, when the trial court's judgment in the patent case became final for purposes of appeal. At that point, all the alleged acts of malpractice had occurred,[9] the malpractice cause of action had accrued,[10] and the malpractice cause of action had been "discovered" for section 95.11(4)(a) purposes, as explained below.
Under Silvestrone, the section 95.11(4)(a) discovery requirement is satisfied when a court issues its final judgment on the merits in the underlying case and that judgment (a) is adverse to the client, and (b) results in damage to the client, and (c) is final for purposes of appeal. Silvestrone, 721 So.2d at 1175-76. At that point, the client suffers redressable harm in the form of the final judgment and, based on that harm, the client is imputed with "discovery" of the malpractice cause of action under section 95.11(4)(a). In the present case, the court's final judgment on the merits in the patent case was adverse to TSE, resulted in damage to TSE, and became final for purposes of appeal on September 16, 2002. At that point, TSE suffered redressable harm in the form of the final judgment and, based on that harm, TSE was imputed with discovery of the malpractice cause of action under section 95.11(4)(a). The statute of limitations began to run at that point.
I disagree with the present majority opinion in two respects. First, the majority opinion holds that the limitations period for the portion of TSE's malpractice claim involving Franklynn's attorney fees and expenses did not begin to run until October 10, 2002, when the parties entered their settlement agreement and TSE suffered redressable harm with respect to those fees and expenses. I respectfully disagree. As a result of the adverse judgment in the patent case, TSE had suffered redressable harm with respect to its own attorney fees and expenses nearly a month earlier, on September 16, 2002, when the case became final. The fact that TSE later suffered additional damages from the *51 same alleged acts of malpractice is irrelevant to the running of the statute of limitations. The Court in City of Miami v. Brooks, 70 So.2d 306 (Fla.1954), stated the general rule in this area:
The general rule, of course, is that where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

Id. at 308 (emphasis added). Or, more succinctly: "[T]he statute [of limitations] must be held to attach when the plaintiff was first put upon notice or had reason to believe that [the] right of action had accrued." Id. at 309 (emphasis added).
This general rule, which is termed the discovery rule, was adopted by the Court in Brooks and has been operative in Florida ever since, for over half a century. See Hearndon v. Graham, 767 So.2d 1179 (Fla. 2000). In 1974, the Legislature codified the rule specifically for professional malpractice claims in section 95.11(4)(a), see ch. 74-382, § 7, at 1211, Laws of Fla., and the language of this statute could not be clearer in this respect: "[T]he period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." § 95.11(4)(a), Fla. Stat. (2002) (emphasis added). Neither the statute itself nor Silvestrone, wherein the Court interpreted the statute, says anything about the limitations period being further delayed by the subsequent discovery of additional damages. This statutory discovery rule falls squarely within the legislative prerogative, and the intent of the Legislature is clear in the plain language of the statute. I conclude that, under the discovery rule, the statute of limitations for TSE's entire malpractice claim began to run on September 16, 2002, when TSE was imputed with discovery of the cause of action under the bright-line rule of Silvestrone.
And second, the present majority opinion holds that the portion of TSE's malpractice claim involving Franklynn's attorney fees and expenses is an independent cause of actionand thus subject to its own limitations periodbecause the damages arising from that portion of the claim are "discrete" from the damages arising from the judgment portion of the claim. Again, I respectfully disagree. In my opinion, the Franklynn damages are not separate. Rather, they are ancillary damages that are dependent on the final judgment for their very existence. As noted above, attorney fees and expenses were awarded to Franklynn pursuant to the federal prevailing party statute, and absent the favorable judgment for Franklynn in the patent case, the award never could have been made. See 35 U.S.C. § 285 (2006). Thus, rather than constituting an independent cause of action, the portion of TSE's malpractice claim involving Franklynn's fees and expenses was an ancillary matter that was irrevocably tied to the final judgment and to the judgment-based portion of TSE's malpractice claim. See generally McGurn v. Scott, 596 So.2d 1042, 1044 (Fla.1992) ("[A]n award of attorneys' fees or costs is ancillary to, and . . . is incidental to the main adjudication.").
Further, the fact that the attorney fees award was not final and was subject to reversal on appeal is immaterial for purposes of the "discovery" of the malpractice cause of action under section 95.11(4)(a), for the bright-line rule of Silvestrone is based not on the finality of a post-judgment *52 ruling on an ancillary matter, but on the finality of the final judgment on the merits. See Silvestrone, 721 So.2d at 1175 ("To be specific, we hold that the statute of limitations does not commence to run until the final judgment becomes final.") (emphasis added). The Court in Silvestrone was unequivocal on this point. In the present case, as noted above, because the final judgment on the merits in the patent case became final for purposes of appeal on September 16, 2002, the statute of limitations for the entire malpractice claim began to run at that point. The Franklynn attorney fees and expenses are just what they appear to beadditional damages arising from the malpractice cause of action.
This does not mean, however, that TSE was without legal recourse with respect to Franklynn's attorney fees and expenses. Franklynn already had been awarded attorney fees and expenses at the time the judgment in the patent case became final, and the amount of those fees and expenses had not yet been calculated. But as noted above, TSE's own attorney fees and expenses were fully known to TSE at that point, and TSE reasonably could have filed its malpractice claim within two years of that date and then, if necessary, amended it to include the amount of Franklynn's fees and expenses. To the extent TSE complains that this would have cast TSE and Larson in adversarial roles, or would have forced TSE to discharge Larson and hire new counsel, or would have forced TSE to pursue conflicting legal positions, I disagree. As it turned out, the amount of Franklynn's attorney fees and expenses was ultimately settled on October 10, 2002, less than a month after the decision in the patent case became final. TSE simply could have waited until that date and then ended its professional relationship with Larson and proceeded with the malpractice claimTSE still would have had nearly the entire two-year period to file its malpractice claim.

D. Conclusion
This case is hardly unique or complicatedit involves a straightforward final judgment and post-trial orders in which everything was decided except for the amount of the prevailing party's attorney fees and expenses. The Court in Silvestrone, in fashioning its bright-line rule, surely contemplated such a commonplace scenario. Instead of disturbing the bright-line rule of Silvestrone, I would simply apply it and remand for reinstatement of the trial court's order of summary judgment barring TSE's malpractice claim in its entirety. To the extent both the present majority opinion and the dissenting opinion conclude that the limitations period began to run not when TSE first discovered its malpractice damages (i.e., when the judgment in the patent case became final), but when TSE later discovered its additional malpractice damages (i.e., when Franklynn's attorney fees and expenses were agreed upon), those two opinions, to my mind, abrogate the discovery rule and violate legislative intent as evidenced in the plain language of section 95.11(4)(a).
I would quash the decision of the district court in TSE Industries, Inc. v. Larson & Larson, P.A., 987 So.2d 687 (Fla. 2d DCA 2008), and approve in part and disapprove in part the decision of the district court in Integrated Broadcast Services, Inc. v. Mitchel, 931 So.2d 1073 (Fla. 4th DCA 2006), as reflected herein.
LEWIS, J., dissenting.
I dissent because I am in substantial agreement with the logical, reasonable analysis provided by the Second District Court of Appeal below, which provided an intellectually sound holding:

*53 On the merits, this case is controlled by Silvestrone because it involves legal malpractice that arises out of the handling of litigation. See Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So.2d 504, 505-06 (Fla. 2001). In Silvestrone, the Florida Supreme Court resolved a conflict between the district courts regarding whether the statute of limitations for legal malpractice begins to run when [1] the jury renders the verdict or [2] when the court enters the final judgment. See Silvestrone v. Edell, 721 So.2d 1173, 1174 (Fla. 1998). The court adopted a "bright-line rule" that the statute of limitations would begin to run when "the litigation is concluded by final judgment." Id. at 1175-76. The court explained that this happens when the final judgment becomes final after the time for filing an appeal expires or the appeals process is concluded. Id. at 1175 n. 2.
The court reasoned that liability for malpractice requires that the attorney be the proximate cause of the adverse outcome of the underlying litigation. Id. at 1175. The court explained that because "redressable harm is not established until final judgment is rendered, a malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client." Id. (citations omitted). Because posttrial motions could affect the plaintiff's rights or liabilities, the statute of limitations does not begin to run until those rights or liabilities are finally determined. Id. at 1175.
Applying Silvestrone to the facts of this case, we conclude that the trial court erred in determining that the statute of limitations began to run before the parties filed a stipulation to dismiss the underlying [patent-infringement] action with prejudice. The Silvestrone court's "bright-line rule" was that that the statute of limitations begins to run when "the litigation is concluded by final judgment." Under the particular facts in Silvestrone, the litigation was concluded when the final judgment became final. In this case, however, the litigation was not concluded until the parties filed the stipulation to dismiss the underlying action with prejudice. . . .
. . . [A] narrow reading of Silvestrone would defeat the very policy concerns the supreme court sought to address in not only that case, but also in [related] jurisprudence. . . .
. . . .
The policy concerns articulated by the supreme court in Peat, Marwick and Blumberg are equally applicable to litigation malpractice actions in which a final judgment has become final for purposes of appeal but postjudgment motions for attorneys' fees are pending.[11]In such actions, the client does not incur damages until the conclusion of the [underlying or] related judicial proceedings when the amount of attorneys' fees has been finally established. Until the case is fully resolved, there is a chance that the appeals process could result in a reversal of the original decision that established an injury.
Furthermore, parties in such actions would be forced to argue inconsistent positions if they were required to file the malpractice action before resolution of attorneys' fees in the underlying action. In the malpractice action in this case, TSE would have argued that they did *54 not have a proper basis for filing the patent infringement action. In the ongoing patent infringement action, TSE would have argued that they did have a proper basis for the action.
In the same vein, forcing an aggrieved party to file a legal malpractice action before the underlying litigation is resolved would also create a conflict of interest that would undoubtedly require counsel to withdraw from representation in the underlying action. This would place the aggrieved party in the untenable position of having to hire new counsel who was unfamiliar with the case to continue the litigation or pursue negotiations at the last hour. This would also take away the opportunity for counsel to correct his or her mistakes in the underlying action.
TSE Indus., Inc. v. Larson & Larson, P.A., 987 So.2d 687, 690-92 (Fla. 2d DCA 2008) (emphasis supplied).
In contrast, today, a majority of this Court has severely undermined the principles of effective jurisprudence and conflict-avoidance that underlie our controlling precedent in Fremont Indemnity Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So.2d 504 (Fla.2001), Blumberg v. USAA Casualty Insurance Co., 790 So.2d 1061 (Fla.2001), Silvestrone v. Edell, 721 So.2d 1173 (Fla.1998), and Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990). The majority adopts an artificial, simplistic approach to an issue that is more complex and demands a far more searching analysis. A cause of action for litigation-related malpractice simply does not accrue under Florida law until redressable harm is definitively established. See, e.g., Coble v. Aronson, 647 So.2d 968, 970 (Fla. 4th DCA 1994) (citing Peat, Marwick, 565 So.2d at 1323). In this context, it has long been recognized that such harm is not established until the conclusion of the underlying litigation. See, e.g., Fremont, 796 So.2d at 506. The essential flaw in the majority's reasoning and holding is that it fails to recognize the full extent of the relevant "underlying litigation." The "twist" that this case presents with regard to the "sanctions" issue entirely undermines the logic and reasoning of the majority.
Larson's alleged malpractice permeated the entirety of the federal patent-infringement proceedings below. Reduced to its essence, TSE has contended, and continues to contend, that Larson's alleged malpractice consisted of improper, incorrect legal advice and shoddy (potentially unethical) legal representation with regard to the validity vel non of TSE's mold-release patent. This legal advice, and Larson's conduct during the federal patent-infringement action, not only (1) "resulted in . . . a jury trial . . . that in all probability would have been avoided had the improper conduct not occurred,"[12] but also, (2) prompted the federal defendant's request for and the federal district court's later grant ofattorneys'-fee sanctions against TSE pursuant to 35 U.S.C. § 285.[13] Having parsed Larson's pedantic, rigid contentions (which supply the principle basis of the majority opinion), it is clear to me that even this law firm recognizes that the patent-infringement litigation did not truly conclude until October 10, 2002, when the *55 "sanctions" dispute ended with the parties entering into a settlement and filing a stipulation to dismiss the underlying patent-infringement action with prejudice. Rather than quibble with this established fact, Larson and the majority seek to artificially cordon off this later, exceedingly important and significant "sanctions" portion of the underlying litigation from the federal district court's judgment on the merits, which was entered on August 16, 2002,[14] and became final for purposes of appeal on September 16, 2002. This peculiar dissection is an act of sophistry.
Larson's alleged malpractice was the focus of both the merits judgment and the "sanctions" proceeding, each of which was a component of the same underlying federal patent-infringement litigation. This federal litigation was the single transaction or occurrence resulting in Larson's alleged malpractice, and the entire matter was not concluded until a stipulation of the parties on October 10, 2002. Instead of forcing a square peg into a round hole, as the majority has done by failing to properly identify when the relevant litigation ended, I would recognize the broader, controlling rule and logic that undergird Silvestrone and related precedent: Redressable harm is not definitively establishedand a cause of action for litigation-related malpractice does not accrueuntil the underlying litigation is concluded. See, e.g., Fremont, 796 So.2d at 506-07 (holding that a cause of action for litigation-related malpractice did not accrue until the pertinent litigation concluded even though the client was aware that some level of deficient representation occurred approximately one decade earlier when it dismissed and replaced its negligent counsel). Tellingly, the majority's approach in this case is substantially similar to that which we definitively rejected in Fremont. See Fremont, 796 So.2d at 507 (Wells, J., dissenting) ("There is . . . a material difference between [1] damages which are totally contingent upon a determination in the underlying litigation and [2] a situation in which some damages are incurred and thereby fixed, and what is to be determined in the underlying litigation is the full extent of the damages. In the latter situation, the cause of action accrues and the statute of limitations begins to run from the moment some damages are definitively incurred, regardless of the effect the underlying litigation may have on the extent of these damages." (emphasis supplied)). This dissenting view was totally rejected there, but apparently has been revived by the majority today.
Here, the underlying litigation did not conclude until October 10, 2002, when the "sanctions" issue was finally determined and the entire matter was dismissed with prejudice. Similar to Fremont, even if TSE had incurred some indeterminate level of damages at an earlier point in the litigation, the true parameters of its damages were not, and could not be, fully realized and determined until the "sanctions" proceeding concluded the underlying litigation. Cf., e.g., Glucksman v. Persol N. Am., Inc., 813 So.2d 122, 124 (Fla. 4th DCA 2002) ("A legal malpractice cause of action accrues not necessarily when the client first suspects that the attorney might have committed malpractice, but rather, when the client incurs damages at the conclusion of the related or underlying judicial proceeding . . . ." (emphasis supplied)); Hold v. Manzini, 736 So.2d 138, 142 (Fla. 3d DCA 1999) ("[M]ere knowledge of possible malpractice is not dispositive of when a malpractice action *56 accrues."). The decision of the present majority to resurrect the approach abandoned in Fremont is an unwise departure from precedent, and it is my hope that this doctrinal misstep will be corrected in time.
The majority's literalistic, mechanical reading of Silvestrone simply does not reflect the reality of when the "underlying litigation" at issue in this case concluded and, further, is totally out of step with our underlying logic and rationale in Peat, Marwick and related decisions. See, e.g., Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido, 790 So.2d 1051 (Fla.2001) (stating that Peat, Marwick and related decisions were intended, inter alia, to prevent clients from having to take directly contrary positions in two contemporaneous actions). Merely because the majority asserts in an unelaborated fashion that "[o]rdinarily, there will not be a substantial gap in time between" resolution of the merits and the later resolution of an inextricably intertwined "sanctions" proceeding, does not make it so. See majority op. at ___. Instead, under the majority's holding today, unless and until an inextricably intertwined "sanctions" proceeding is resolved and definitively concludes the underlying litigation, there remains an unremitting risk that the client will be forced to seek new counsel and to prematurely initiate malpractice litigation for fear of triggering the two-year statute of limitations under section 95.11(4)(a), Florida Statutes. Cf. Taracido v. Perez-Abreu, Zamora & De La Fe, P.A., 705 So.2d 41, 43 (Fla. 3d DCA 1997) ("The existence of legal malpractice is often difficult to ascertain. A client should not be placed in the position of having to file a potentially baseless claim prematurely fearing that otherwise an action will be precluded by the statute of limitations."), approved, 790 So.2d 1051 (Fla.2001). As the Second District Court of Appeal correctly recognized below, this unnecessary risk triggers all of the undesirable, unreasonable attendant concerns that we identified in Peat, Marwick:
[P]arties in such actions would be forced to argue inconsistent positions if they were required to file the malpractice action before resolution of attorneys' fees in the underlying action. In the malpractice action in this case, TSE would have argued that they did not have a proper basis for filing the patent infringement action. In the ongoing patent infringement action, TSE would have argued that they did have a proper basis for the action.
In the same vein, forcing an aggrieved party to file a legal malpractice action before the underlying litigation is resolved would also create a conflict of interest that would undoubtedly require counsel to withdraw from representation in the underlying action. This would place the aggrieved party in the untenable position of having to hire new counsel who was unfamiliar with the case to continue the litigation or pursue negotiations at the last hour. This would also take away the opportunity for counsel to correct his or her mistakes in the underlying action.
TSE, 987 So.2d at 692 (emphasis supplied).
Fortunately, this undesirable outcome is entirely avoidable by recognizing that Silvestrone simply did not involve, address, or contemplate litigation that continued past the time when a merits judgment became final, such as the present case in which an inextricably intertwined "sanctions" issue was later resolved to conclude the underlying litigation. Under circumstances such as these, the narrow articulation of the rule announced by the majority is inapposite, but the broader supporting rule continues unabated: In litigation that proceeds past the point contemplated in *57 Silvestrone, including cases that involve intertwined "sanctions" proceedings, "redressable harm cannot be determined until the conclusion of the [underlying] litigation." Fremont, 796 So.2d at 506; see also Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 271 F.3d 1272, 1274 (11th Cir.2001) ("[T]he Supreme Court of Florida held that the statute of limitations began to run at the conclusion of the underlying litigation." (emphasis supplied)). In my view, the only reasonable and logical analysis is that the underlying litigation continued here until October 10, 2002, and TSE filed its malpractice complaint against Larson in Florida circuit court on October 5, 2004, less than two years after Larson filed the stipulation to dismiss the federal patent-infringement action. Given the material facts, this is the only proper conclusion under Florida law.
In addition to the above-expressed concerns, the majority's analysis and holding squarely conflict with, and contradict, the traditional rule against splitting causes of action:
We recognize the rule against the splitting of causes of action and that as a general rule the law mandatorily requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all. As is stated in 1 Am.Jur. 481, "the rule is founded upon the plainest and most substantial justicenamely, that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of suits."
Gaynon v. Statum, 151 Fla. 793, 10 So.2d 432, 433 (1942) (emphasis supplied); see also Dep't of Agric. & Consumer Servs. v. Mid-Fla. Growers, Inc., 570 So.2d 892, 901 (Fla.1990) ("The rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action." (emphasis supplied)). This rule is founded on the following policy concerns:
(1) finality in court cases promotes stability in the law;
(2) multiple lawsuits arising out of a single incident are costly to litigants and an inefficient use of judicial resources; and
(3) multiple lawsuits cause substantial delay in the final resolution of disputes.
Mid-Fla. Growers, 570 So.2d at 901 (formatting altered).
In the present case, without relying upon any authority other than the incorrectly decided conflict case, the majority has concluded that two separate causes of action for litigation-related malpractice accrued (one associated with the merits judgment and another with the inextricably intertwined sanctions proceeding). See majority op. at ___. Again the majority fails to see the forest for the trees. There was a single ongoing episode that TSE alleges constituted malpractice. Specifically, TSE contends that Larson's alleged malpractice consisted of improper, incorrect legal advice and shoddy (potentially unethical) legal representation with regard to the validity vel non of TSE's mold-release patent. According to TSE and the record in this case, this single alleged episode led to both (a) the adverse merits judgment, and (b) the "sanctions" proceeding and associated attorneys'-fee award, each of which was a component of the same undifferentiated, inextricably intertwined underlying patent-infringement litigation, which was dismissed with prejudice on October 10, 2002.
Therefore, the majority has not at all identified separate malpractice actions that accrued at different points in time, but instead, has merely described the combined damages that flowed from an episode *58 of alleged malpractice, which accrued when the underlying litigation concluded. Where, as here, mutuality of parties and issues exists, the general rule applies, and a litigant may not split its cause of action to seek separate damages that arise from the same allegedly wrongful conduct. See, e.g., Mid-Fla. Growers, 570 So.2d at 901. To my knowledge this has always been the fundamental and elemental common-law rule in Florida, and Larson has not consented to separate actions arising from the same transaction or occurrence. The majority is simply incorrect as a matter of law that two separate causes of action for legal malpractice existed in this case.
For these reasons, I would approve the decision of the Second District below in TSE Industries, Inc. v. Larson & Larson, P.A., 987 So.2d 687 (Fla. 2d DCA 2008), and disapprove the sparsely reasoned conflict decision in Integrated Broadcast Services, Inc. v. Mitchel, 931 So.2d 1073 (Fla. 4th DCA 2006). The decision of the majority is neither compelled nor supported by Florida law. I respectfully dissent.
QUINCE, C.J., and PARIENTE, J., concur.
NOTES
[1] The federal district court granted in part and denied in part TSE's motions, holding that competent, substantial evidence supported all but one of Franklynn's claims of patent invalidity. The court denied all of TSE's other claims and denied a new trial.
[2] The complaint alleged the same seven bases for both the negligence and breach of contract counts. TSE claimed that Larson (1) failed to adequately investigate the validity of TSE's patent; (2) failed to review relevant files before advising TSE to file suit; (3) advised TSE the patent infringement suit was "strong"; (4) failed to advise TSE of concerns about patent validity and the veracity of TSE's employee as a witness; (5) knowingly prepared and filed a false interrogatory response; (6) failed to advise TSE of issues regarding patent validity raised in correspondence; and (7) failed to adequately advise TSE's management regarding weaknesses in the action before and after filing suit.
[3] Mitchel immediately withdrew from representation and settled with the defendants.
[4] Similarly, we have striven to establish that same clarity in transactional legal malpractice actions. See Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido, 790 So.2d 1051, 1054 (Fla.2001) (holding that statute of limitations for a transactional legal malpractice action begins to run "when the client incurs damages at the conclusion of the related or underlying judicial proceedings or, if there are no related or underlying judicial proceedings, when the client's right to sue in the related or underlying proceeding expires" (quoting Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061, 1065 (Fla.2001))).
[5] In his concurrence, Judge Altenbernd acknowledges as much. He states:

In this case, . . . it would seem that a claim of professional malpractice accrued prior to October 2002 because a final judgment. . . against the client existed prior to that time. It would appear that the plaintiff in this case had discovered the act of alleged malpractice more than two years prior to the filing of this lawsuit.
987 So.2d at 693.
[6] It is noteworthy that the majority opinion of the Second District does not discuss the text of the statute or make any reference to the question of when the cause of action was "discovered."
[7] Our analysis does not entail the impermissible "splitting" of causes of action. The question of whether a cause of action has accrued is logically prior to the question of whether there is an impermissible splitting of causes of action. "The rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action." Dep't of Agric. & Consumer Servs. v. Mid-Florida Growers, Inc., 570 So.2d 892, 901 (Fla. 1990) (emphasis added). The rule does not require the joinder of a cause of action that is not "available" because it has not accrued with a cause of action that has accrued. See Gilbert v. Fla. Power & Light Co., 981 So.2d 609, 614 (Fla. 4th DCA 2008) ("[U]nder the rule against splitting a cause of action, a new claim for damages is not barred if the underlying cause of action had not accrued at the time of filing the previous lawsuit.").
[8] This Court's judgment with respect to the malpractice claim regarding the underlying action is concurred in by Justices Canady, Polston, Labarga, and Perry. The judgment with respect to the sanctions-based malpractice claim is concurred in by Chief Justice Quince and Justices Pariente, Lewis, Canady, Polston, and Labarga.
[9] TSE alleged that Larson committed the following acts of malpractice: (1) failed to adequately investigate the validity of the patent; (2) failed to conduct an adequate review before advising TSE to file suit; (3) advised TSE the patent infringement suit was "strong"; (4) failed to advise TSE of concerns about patent validity and the veracity of TSE's employee as a witness; (5) knowingly prepared and filed a false interrogatory response; (6) failed to advise TSE of issues regarding patent validity raised in correspondence; and (7) failed to adequately advise TSE's management staff regarding weaknesses in the action before and after filing suit.
[10] Florida law provides that "[a] cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (2002). As for legal malpractice claims, the Court has held that "[a] legal malpractice action has three elements: 1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp., 969 So.2d 962, 966 (Fla.2007) (quoting Sec. Nat'l Servicing Corp. v. Law Office of David J. Stern, P.A., 916 So.2d 934, 936-37 (Fla. 4th DCA 2005)). And finally, the Court has held that, under the discovery rule, a cause of action cannot accrue until the plaintiff reasonably discovers the right of action. Hearndon v. Graham, 767 So.2d 1179, 1184 (Fla.2000).
[11] See, e.g., Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla. 1990) ("We find that the basic principles for all professional malpractice actions should be the same. . . .").
[12] TSE, 987 So.2d at 689.
[13] This statute provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." The statute applies in patent-infringement actions and is intended "to provide discretion where it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1052 (Fed.Cir.1987) (emphasis omitted).
[14] The federal district court also entered a "sanctions" order on this same date. Thus, the parties were well aware that the entire litigation would not be resolved and concluded until the court determined with finality the character and amount of sanctions.